**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x   Case No.: 20-cv-00018-JGLC-SLC
REDCELL CORP. and REDCELL SYSTEMS, LLC,

                                          Plaintiffs,
     -against-

A. J. TRUCCO, INC. and TRUCCONOVA, LLC,

                                          Defendants.
------------------------------------------------------------------------x


**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION IN LIMINE</u>**


                                               RUSS & RUSS, P.C.
                                               Attorney for Plaintiffs
                                               Post Office Address:
                                               543 Broadway
                                               Massapequa, New York 11758
                                               (516) 541-1014
                                               jayruss@russrusspc.com

**PRELIMINARY STATEMENT**

Plaintiffs Redcell Corp. and Redcell Systems, LLC (jointly **"Redcell"**) submit this Memorandum of Law in support of the motion *in limine* barring Defendants A.J. Trucco, Inc. and Trucconova, LLC (jointly **"Trucco"**) from asserting at trial that Trucco owns or co-owns, the computer software known as Plexus IMP, Plexus WMS and Plexus PCN, and any of the source code (hereinafter referred to as **"Plexus"**) and any other software developed by Redcell, including, under an alleged oral or written ownership agreement, or as an alleged "work for hire" under the Copyright Act (17 U.S.C. § 101, et. seq.), and precluding Trucco from offering and introducing into evidence Exhibits DX-121, DX-127, and DX-270 (the "Exhibits")[1], which purport to be iterations of a Software Development Agreement dated as of July 28, 2008 on the grounds that the Exhibits lack all foundation, are inauthentic and incomplete.

**FACTS OF THE CASE**

Trucco is in the fruit and nut importing and warehousing business. It is not in the business of developing software or source code. Redcell is in the technology business and develops software and source code. Redcell installed Plexus at Trucco in or about 2012 under a licensing arrangement. Plexus was first created by Redcell's technology team in Peru between 2010 to 2012 for another client, Lucca Freezer & Cold Storage ("Lucca"), which was also in the warehousing business. Redcell created a version of Plexus known as Plexus WMS (warehousing management system), which Redcell owned and licensed to Lucca, and which Redcell installed at Lucca's facility. Trucco then asked Redcell to develop a version of Plexus tailored to Trucco's business needs. As is customary in the software development business, Trucco explained its business needs to Redcell and Redcell developed the software and source code, named Plexus IMP, which

---

[1] These are attached to the Levine Declaration as Exhibits "B" through "D".

contained robust features of both Plexus IMP and Plexus WMS.  Redcell owned, but licensed to Trucco (oral, implied by conduct, and reflected in paid invoices) Plexus IMP, and installed it at Trucco. The April 2013 letter (Exhibit "A"), signed by Trucco, states that "[i]n 2009, we became aware of the need for a system to track and manages the containers coming from around the world in a single platform", and that Trucco hired Redcell to create "the Import platform, Plexus…"

Trucco and Redcell signed an agreement dated as of November 26, 2018 (the **"2018 Agreement"**; Exhibit "H") in which Trucco acknowledged that the 2018 Agreement "supersede[d] any written, electronic or oral communication (Trucco) may have had with RedCell or any of RedCell's *(sic)* representatives" and was "the complete and entire agreement" between Redcell and Trucco.  Trucco's license to use Plexus continued until the early part of 2019 when it terminated the license, stole Redcell's trade secrets, stole key personnel (contrary to an "anti-raiding" provision in the 2018 Agreement) and thereby obtained access to the Plexus source code and use of Plexus by former Redcell employees trained on Plexus.  To be clear, prior to Trucco's termination of the license and the taking by Trucco of Redcell personnel, it was Redcell's employees who had been operating Plexus for Trucco's business, and Redcell's technology staff who were maintaining Plexus and performing fixes as part of services provided by Redcell.

Redcell commenced this action in 2020 by filing the Complaint (Doc. No. 8) seeking damages based on Trucco's violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, et seq.) (**"DTSA"**).  Redcell seeks damages based on Trucco's "unjust enrichment," and punitive damages and counsel fees pursuant to the DTSA.  Trucco's Answer to the Complaint (Exhibit "G") consists merely of general denials and fourteen sundry affirmative defenses.  <u>Trucco did not assert any affirmative defenses based on a claim of ownership or co-ownership of Plexus. Trucco did not assert the existence of a statutorily compliant written "work for hire" agreement between Trucco</u>

and Redcell.

This *in limine* motion is necessary because Trucco has asserted, and Redcell anticipates that Trucco will assert at trial, that it either owns or co-owns software developed by Redcell – especially Plexus - because it allegedly contributed its ideas, expectations, and business requirements. Although Trucco's contributions might have been important, they do not support or establish ownership or co-ownership of Plexus. Indeed, Trucco confirmed in its April 2013 Letter (Exhibit "A") that all it did was communicate its business needs to Redcell ("We provided [Redcell] a list of requirements…"). Therefore, it was Redcell which created the sophisticated and complex software program that was licensed to Trucco. Indeed, in the April 2013 letter, Trucco stated that "RedCell mapped out our business process and understood my vision for the future…RedCell's developed the Import platform, Plexus, with all the requirements we requested." Redcell wrote the Plexus source code and created the software. At trial, the jury should not be misled by such arguments or claims by Trucco because they are contrary to law.

Redcell anticipates that Trucco will offer the Exhibits as proof of its alleged ownership in Plexus. The Exhibits purport to be a 2008 Software Agreement between Redcell and Trucco. However, all of the Exhibits are incomplete. In particular, both Exhibits DX-121 and DX 127 are unsigned by Redcell. For this reason alone, Exhibits DX-121 and DX 127 are both inadmissible.

Moreover, the fourth paragraph of the 2008 Agreement in its three iterations states "RedCell shall design and develop the Application pursuant to the specifications provided by TRUCCO to RedCell and annexed hereto as Exhibit 'A'." However, the Exhibit A is missing from the Exhibits. In addition, Exhibit DX-270 purports to be a four page documents. However, the last two pages consist of two obviously extraneous and unrelated documents (an alleged letter of transmittal and an invoice), neither of which are part of the 2008 Agreement. As such, Exhibits

DX-121, DX-127 and DX-270 are inadmissible. As a result, Trucco cannot prove that the 2008 Software Agreement relates to Plexus or to any software developed by Redcell.

Trucco must also prove its ownership by a written "work for hire" agreement. No such written agreement, Trucco should be precluded from asserting a claim of ownership or co-ownership of Plexus. Any such argument is contrary to law, would only confuse the jury and is prejudicial to Redcell.

## POINT I

### TRUCCO CANNOT ASSERT OWNERSHIP OR CO-OWNERSHIP OF PLEXUS BECAUSE THERE IS NO WRITTEN "WORK FOR HIRE" AGREEMENT

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" Palmieri v. Defaria, 88 F.3d 136 (2d Cir. 1996). Motions *in limine* narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990); Laufen Int'l, Inc. v Larry J. Lint Floor & Wall Covering, Co., Inc., No. 2:10-CV-199, 2012 WL 1458209, at *1 (W.D. Pa. Apr. 27, 2012). Evidence should be excluded on a motion *in limine* when the evidence is clearly inadmissible on all potential grounds. United States v. Paredes, 176 F. Supp.2d 179, 181 (S.D.N.Y. 2001).

Trucco cannot point to a written agreement signed by Redcell that sets forth Trucco's alleged ownership. Trucco's unpled "defense" falls short of the "work for hire" requirements set forth in Section 101 of the Copyright Act. Therefore, the defense should be barred from the trial because it would sow confusion, mislead the jury, and prejudice Redcell.

Issues involving ownership of intellectual property are the exclusive province of Federal law, and in particular, the Copyright Act (17 U.S.C. § 101). The Copyright Act provides that

4

copyright ownership "vests initially in the author or authors of the work." Id. § 201(a). Well-settled precedent designates "the author" as the person who "actually creates the work; that is, the person who translates an idea into a fixed, tangible expression," making the work copyrightable. Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989); Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 107 (2d Cir. 2002). Ownership confers a panoply of rights, including the right to sell; to license, exclusively or non-exclusively; to make derivative works; to perform (for those works amenable to performance); and generally, to control and shape uses permitted to others. See 17 U.S.C. § 106 ("Exclusive rights in copyrighted works").

The only exception to this common-sense rule relevant to this case is the "work for hire" doctrine. Section 101 of the Copyright Act defines a "work made for hire:"

A "work made for hire"[2] is-

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.
(Emphasis added)

The party relying on the "work for hire" exception – in this case Trucco – has the burden to prove that the exception applies to its claim of ownership. Woods v. Bourne Co., 60 F.3d 978,

---

[2] Most Courts, including the Second Circuit, use the phrase "work for hire" interchangeably with "work made for hire." Horror Inc. v. Miller, 15 F.4th at 243 (2d Cir. 2021).

5

993-94 (2d. Cir. 1995); Horror Inc. v. Miller, 15 F.4th 232, 242-43 (2d Cir. 2021). Trucco cannot meet its burden. Trucco cannot introduce admissible evidence at trial of an express written "work for hire" agreement for Plexus. Even then, the work must fall under one of nine specific categories: (a) a contribution to a collective work, (b) a part of a motion picture or other audiovisual work, (c) a translation, (d) a supplementary work, (e) a compilation, (f) an instructional text, (g) a test, (h) answer material for a test, or (i) an atlas. None of these categories apply. Trucco cannot prove any of the required "work for hire" elements. 17 U.S.C. § 101; 17 U.S.C. § 201(b); See, Horror Inc. v. Miller, 335 F. Supp.3d 273, 294 (D. Conn. 2018), aff'd, 15 F.4th 232 (2d Cir. 2021).

Courts have labeled the requirement of an express written "work for hire" agreement to be the Copyright Act's version of the Statute of Frauds. Roth v. Pritikin, 787 F.2d 54, 56 (2d Cir. 1986)("…the Copyright Act of 1976, effective in 1978, which includes a statute of frauds provision for 'works for hire', see 17 U.S.C. § 101…"). Even so, the requirement of an expressly written "work for hire" is not just a Congressional nod to the Statute of Frauds. As Judge Posner, writing for the Seventh Circuit, stated in the seminal case Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 412 (7th Cir. 1992):

> The requirement of a written statement regarding the copyright on a specially commissioned work is not merely a statute of frauds, although that is the purpose emphasized by the cases. *Dumas v. Gommerman*, 865 F.2d 1093, 1101 (9th Cir. 1989); *Easter Seal Society for Crippled Children and Adults of Louisiana, Inc. v. Playboy Enterprises, Inc.*, 815 F.2d 323, 328 n.8 (5th Cir. 1987). That is, it is not only designed to protect people against false claims of oral agreements…<u>For the signed-statement requirement in section 101(2) has a second purpose-to make the ownership of property rights in intellectual property clear and definite, so that such property will be readily marketable.</u>
> (Emphasis added)

Subsequent decisions of the Second Circuit align with the Seventh Circuit on this principle, notably Playboy Enterprises, Inc. v. Dumas, 53 F.3d 549, 559 (2d Cir. 1995) and Estate of Kauffmann v. Rochester Institute of Technology, 932 F.3d 74, 78 (2d Cir. 2019). In Estate of

Kauffmann, *supra*, the Second Circuit reviewed, analyzed, and affirmed its decision in Playboy Enterprises, Inc., *supra*, and stated in pertinent part:

> As in the pending case, the parties in *Playboy* agreed that Nagel was not an employee of the magazine. *See id.* at 558. In determining whether the legends sufficed to satisfy the writing requirement of section 101(2), Judge Oakes' opinion[3] said that our Court agreed with the Seventh Circuit **"that the writing requirement was created, in part, to make the ownership of intellectual property rights clear and definite." *Id.* at 559**. The Supreme Court, he noted, had observed that "one of Congress's goals in creating the work-for-hire provisions of the 1976 Act was to 'ensur[e] predictability through advance planning.'" *Id*. (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750 (1989)). "Congress's goal of 'predictability'" he wrote, "would be thwarted if a hiring party and an independent contractor could enter into a work-for-hire agreement years after a work was created." *Id*.
> (Emphasis added)

Trucco cannot produce a "clear and definite" statutorily compliant written "work for hire" agreement of ownership. No such agreement exists. Indeed, Trucco confirmed in the 2018 Agreement (Exhibit "H") that there were no other applicable in force agreements. Trucco should be precluded from asserting ownership of Plexus.

Redcell anticipates that Trucco will assert that it contributed its ideas, expectations, and requirements to Redcell. Trucco did not create programs or source code or any other tasks normally associated with the creation of software. See S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1086-87 (9th Cir. 1989), in which a manager who "told…programmers what tasks the software was to perform and how it was to sort data" but "did none of the coding and d[id] not understand computer language" was not a co-author because "one must supply more than mere direction or ideas" and cannot "merely describ[e] to an author what the commissioned work should do or look like". See also, Gaylord v. United States, 595 F.3d 1364, 1379 (Fed. Cir. 2010) (a party's contribution of "direction and ideas" "did not rise to the level necessary for a joint work").

---

[3] Judge Oakes authored the decision in Playboy Enterprises, Inc., *supra*.

7

"[J]oint authorship requires each author to make an independently copyrightable contribution." Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990). Courts will not find objective manifestations of intent in the absence of clear contractual language. Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 969 (9th Cir. 2008). The statutory intent required to create joint authorship "exists when the putative joint authors intend to regard themselves as joint authors...It is not enough that they intend to merge their contributions into one unitary work." Papa's-June Music, Inc. v. McLean, 921 F.Supp. 1154, 1157 (S.D.N.Y. 1996), citing Childress v. Taylor, 945 F.2d 500, 505 (2d Cir. 1991). That does not exist in this case.

Trucco should also be precluded from arguing at trial that it owns or co-owns Plexus IMP, Plexus WMS or Plexus PCN, which did not exist until 2012, based on the incomplete 2008 Agreement. Trucco has not produced a complete 2008 Agreement. Moreover, the 2008 Agreement was a development agreement involving a limited software application "using Microsoft .Net framework and Microsoft SQL 200i as a database Engine for Trucco's old system predating 2008.

The proffered Exhibits (DX-121, DX-127 and DX-270) are not evidence of a complete agreement under New York law because the Exhibit A is missing from each of them. As a result, each exhibit, standing alone, is inadmissible. None of the iterations purport to set forth what the parties have allegedly agreed to, or what Trucco alleges what was agreed to. The New York Court of Appeals stated in 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 78 N.Y.2d 88, 91 (1991): "The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to…" The Court stated in Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 482 (1989) "[i]f an agreement is not reasonably certain in its material terms, there

8

can be no legally enforceable contract". Moreover, as Redcell's expert, J. Christopher Westland, PhD, CPA,[4] stated in his report dated May 12, 2021, and in his deposition testimony (Levine Aff. ¶ 10; Exhibits "E" & "F"), the Plexus system created by Redcell was a brand new system; it was a "full-fledged industrial SQL database management system" that replaced Trucco's antiquated and inadequate personal database management system (Exhibit "F"; Tr. P. 72, l. 6-P.73, l. 11).

The incomplete Exhibits DX-121, DX-127 and DX-270 do not constitute a work for hire agreement under the Copyright Law. Trucco also cannot prove any one of the nine required categories of work for hire agreements; in relevant part, that it made a contribution to a collective work, or that Plexus (not even in existence) was a supplementary work.. 17 U.S.C. § 101; 17 U.S.C. § 201(b); Horror Inc. v. Miller, 335 F. Supp.3d at 294 (D. Conn. 2018), aff'd, 15 F.4th 232 (2d Cir. 2021).

## POINT II

### TRUCCO DID NOT ASSERT "WORK FOR HIRE" AS A DEFENSE AND WAIVED THE DEFENSE

Trucco also waived the defense of ownership or co-ownership or any claim of a "work for hire" agreement. Trucco's defense was not asserted in its Answer (Exhibit "G"). "Work for hire" is an affirmative defense. Circuit Courts of Appeal (including the Second Circuit) unequivocally hold that "work for hire" is an affirmative defense on which the defendant - in this case Trucco - bears the burden of proof. Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 105 (2d Cir. 2002); MacLean Associates, Inc. v. Wm. M. Mercer–Meidinger–Hansen, Inc., 952 F.2d 769, 771 (3d Cir. 1991); Twentieth Century Fox Film Corp. v. Entertainment Distributing, 429 F.3d 869, 877 (9th Cir. 2005); Allan v. Springville City, 388 F.3d 1331, 1336

---

[4] Dr. Westland's PhD is in computers and information systems and "deal(s) with information technology as it relates to finance and accounting." Tr. P. 60; 92.

(10th Cir. 2004); SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp.2d 301, 314 (S.D.N.Y. 2000) ("Like work-for-hire, joint authorship is an affirmative defense).

Trucco's failure to plead "work for hire" an affirmative defense results in forfeiture of that alleged defense. Foster v. Lee, 93 F. Supp.3d 223, 229 (S.D.N.Y. 2015). An affirmative defense, once forfeited, is excluded from the case. Wood v. Milyard, 566 U.S. 463, 470 (2012) (cleaned up); see also, 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (3d Ed. 2004). Since Trucco waived "work for hire" as an affirmative defense, it should be excluded from the trial.

## CONCLUSION

Redcell's motion *in limine* should be granted and Trucco should be precluded from introducing any evidence or argument that it owns or co-owns Plexus (Plexus IMP, Plexus WMS, Plexus PCN, and source code) or any other software developed by Redcell, and should be precluded from introducing Exhibits DX-121, DX 127 and DX-270 at trial, together with such other and further relief as the Court deems just and proper.

Dated: Massapequa, New York
November 13, 2023

RUSS & RUSS, P.C.

By: _____
Jay Edmond Russ, Esq.
Ira Levine, Esq., of counsel
Attorney for Plaintiffs
543 Broadway
Massapequa, New York 11758
(516) 541-1014
jayruss@russrusspc.com
ilevinelaw@optonline.net