THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| REDCELL CORP., and REDCELL SYSTEMS, LLC,<br><br>   Plaintiffs,<br><br>v.<br><br>A.J. TRUCCO, INC. and TRUCCONOVA, LLC,<br><br>   Defendants. | No. 1:20-cv-00018-JGLC-SLC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE CERTAIN DOCUMENTS ON PLAINTIFFS' EXHIBIT LIST BASED ON THEIR FAILURE TO COMPLY WITH THIS COURT'S NOVEMBER 2, 2023 ORDER (ECF NO. 111)**

Rajiv D. Parikh, Esq.
Charles J. Messina, Esq.
Lawrence Bluestone, Esq.
**GENOVA BURNS LLC**
115 Broadway, 15th Floor
New York, NY 10006
Phone: 212-566-7188
rparikh@genovaburns.com
cmessina@genovaburns.com
lbluestone@genovaburns.com

*Attorneys for Defendants A.J. Trucco, Inc. and Trucconova, LLC*

Defendants A.J. Trucco, Inc. and Trucconova, LLC ("Defendants") respectfully submit this memorandum of law in support of their motion *in limine* to exclude certain trial exhibits proposed by Redcell Corp. and Redcell Systems, LLC's ("Plaintiffs") based on their failure to comply with clear and express requirements of the Court's November 2, 2023 Order (ECF No. 111).

In short, Plaintiffs' have not complied with the November 2 Order, which required Plaintiffs to "produce a copy of all documents on [their] exhibit list, with metadata to the extent applicable, to Defendants by no later than November 6, 2023." (ECF No. 111). Plaintiffs did not timely identify or provide a copy of 12 of their proposed exhibits, and did not provide metadata for the 27 exhibits where such information is necessary and relevant. As a result, Defendants are in a position where it is impossible to fully complete their pre-trial submissions and, in turn, are prejudiced in their preparation for trial. Plaintiffs' failure to comply with the November 2 Order continues as of this date.

## **LEGAL STANDARD**

"[A]ll litigants… have an obligation to comply with court orders," *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990). When they do not, courts have broad discretion to fashion appropriate remedies related to such failures. For example, the court may involuntarily dismiss an action under Fed. R. Civ. P. 41(b) for failure to comply with a court order. Rule 37 similarly allows the Court to issue the ultimate sanction of dismissal if a plaintiff fails to comply with a court order. *See S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). Rule 37 also provides the Court with "wide discretion in sanctioning a party" for violations of orders. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). This authority also exists under Rule 16, as the Court's inherent authority to manage proceedings before it, to impose sanctions for violations of orders and wasting

time of the Court and opposing counsel. *Dallas v. Goldberg*, 95 Civ. 9076(LTS)(RLE), 2003 WL 22872325 at *1 (S.D.N.Y. Dec. 5, 2003) (citing *Chambers v. NASCO*, 501 U.S. 32, 43–50 (1991) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).

Dismissal is not, however, the only available remedy. The court's broad discretion includes the ability to fashion an appropriate remedy, including barring a party from introducing documents or matters at trial. *See e.g.* Fed. R. Civ. P. 37(b)(2)(A) (court may prohibit "the disobedient party . . . from introducing designated matters in evidence"); *see also Greifman v. Grossman & Karaszewski, PLLC*, No. 19-CV-04625 (PMH), 2020 WL 1659750, at *2 (S.D.N.Y. Apr. 3, 2020) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (outlining four factors to review in determining exclusion of evidence)). When assessing potential prejudice and the possibility of a continuance, this Court has considered whether any prejudice to one party can be remedied before trial without necessitating a continuance. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,* 15-CV-3526 (KMW) (SDA), 2018 WL 485980, at *1 (S.D.N.Y. Jan. 19, 2018). Here, it is irrefutable that Plaintiffs failed to satisfy the mandates of the Court's November 2, 2023 Order (ECF No. 111), which required the production of all trial exhibits and accompanying metadata (where applicable) by November 6, 2023. As such, Plaintiffs should be precluded from introducing certain exhibits they propose at trial pursuant to the Court's broad discretion under the Federal Rules.

## ARGUMENT

### A. *The Court's November 2, 2023 Order and November 6, 2023 Deadline*

Considering the Court's pre-trial deadlines, and following an unsuccessful mediation, Defendants began requesting trial exhibits from Plaintiffs in early October 2023. (Declaration of Rajiv D. Parikh ("Parikh Decl.") ¶¶ 39-41 (ECF No. 121).) In addition, Defendants – to ensure its counsel had a complete copy of records produced in discovery – sought a copy of all pre-trial

discovery. (*Id.* ¶ 42 & Ex. 1.) Finally, on October 19, 2023, copies of files never produced during discovery (the "Disputed Material") were transmitted to defense counsel.[1] (*See* ECF No. 108). Defendants attempted to meet and confer, but ultimately were constrained to request the Court's intervention related to these matters. (*See* ECF No. 108.) As a result, on November 2, 2023, the Court issued an Order requiring, among other things, the following:

> Plaintiffs are also ORDERED to **produce all documents on their exhibit list, with metadata to the extent applicable, to Defendants by no later than November 6, 2023.** The Court suggests that Plaintiffs utilize the assistance of an IT specialist in producing the documents with metadata.

(ECF No. 111, ¶ 2 (emphasis added).)

Plaintiffs failed to comply with this mandate. Plaintiffs had previously provided a list with 107 proposed exhibits. (Parikh Decl. ¶ 55 & Ex. 3.) The exhibit list provided did not contain bates numbers, actual file names, or other references to document source. (Declaration of Lawrence Bluestone ("Bluestone Decl.") ¶ 3.) More importantly, the exhibit list was sent without actual copies of records and, as a result, Defendants could not identify what records Plaintiffs intended to use. (*Id.*) Defendants requested such source information from Plaintiffs almost immediately, but none has been provided to date. (Parikh Decl. ¶ 64).[2]

On November 2, 2023, Plaintiffs provided PDF copies of only the first 75 of those exhibits (PX-1 through PX-75). (Bluestone Decl. ¶ 4.) The remainder[3] of Plaintiffs' proposed trial exhibits,

---

[1] As the Court is aware, the Disputed Materials were not produced with metadata intact. A second production was made, and the prejudice that would result from the introduction of such exhibits at trial that were never produced in discovery (in any form) is set forth in Defendants' Motion *in Limine* No. 2.

[2] The lack of copies, bates identification, file name or source information with Plaintiffs' exhibit list made it impossible to properly identify the vast majority of Plaintiffs' proposed trial exhibits because Plaintiffs' actual productions in this case contain documents totaling nearly 100,000 pages of records, and the unproduced Disputed Materials (which were only identified as a source of trial exhibits last month) consists of potentially several millions of pages of records.

[3] Plaintiffs also produced PX-76, and PX-80 through PX-84 following the Court's deadline. However, these exhibits are Trucco tax returns that were requested in October and produced thereafter. Plaintiffs asserted on November 6, 2023 that it needed additional tax records, and Defendants agreed to and did produce same with a reservation of rights

3

marked PX-76 through PX-84, were only produced on November 10. (*Id.* ¶ 5.) Then at 1:40 pm today, November 13, 2023, Plaintiffs provided a purported replacement for PX-39, as a compilation exhibit, again without relevant metadata. (*Id.* ¶ 7.) In short, and despite Defendants' attempts to meet and confer and obtain Plaintiffs' exhibits – or at least receive some insight into what was being identified – Plaintiffs continued their game of hiding the ball and disregarded the Court's November 2 Order. (ECF No. 113, ¶ 2.)

As such, and as set forth below, the following exhibits[4] should be excluded for failure to comply with the Court's November 2 Order:

| Exhibit Number | General Description | Date Produced | Metadata Produced? |
|---|---|---|---|
| PX-1, 2, 4 and 6 - 22 | Screenshots of Software | November 2 (as PDFs) | No |
| PX 36 and 62 | Website Screenshots | November 2 (as PDFs) | No |
| PX 38 | Document purporting to be from a Website | November 2 (as PDFs) | No |
| PX-77, 78 | PowerPoint Slides | November 10 (as PDFs) | n/a |
| PX-79 | Kiwifruit Presentation | November 10 (as PDF) | n/a |
| PX-39 | Emails/Soft-copy Document/PDFs (compilation) | November 13 at 1:40 p.m. (as PDF) | No |

**B.** *Despite the Court's Mandate, Plaintiffs did not Produce Exhibit-Related Metadata*

Metadata for relevant trial exhibits has still not been produced as of the time of this filing. Plaintiffs did – one day after the Court's deadline – provide a copy of the Disputed Materials with over 380,000 separate files, along with a declaration of Yalkin Demirkaya, Sr. ("Demirkaya Decl."), outlining steps taken to extract that data held by Plaintiffs. (ECF No. 112, ¶ 5.) Despite the fact that Defendants identified Plaintiffs' failure on November 7, and Plaintiffs produced

---

in lieu of additional motion practice. As such, Trucco does not seek to exclude these records on the basis that they were not timely produced.

[4] There are a significant number of exhibits transmitted by Plaintiffs that were never produced in discovery and do not appear in the Disputed Materials, which are the subject of Motion *In Limine* No. 2.

copies of additional exhibits on November 10, 2023, Plaintiffs have still failed to provide relevant exhibit-related metadata. (Bluestone Decl. ¶ 6.) Indeed, this metadata is not available in any of the discovery produced by the parties, or in either of the Disputed Materials drives delivered to counsel.

Redcell's letter, along with the declaration of its expert, Yalkin Demirkaya, actually raises more concerning questions than answers in this regard. (ECF No. 112.) In particular, Mr. Demirkaya's declaration states that he accessed the Disputed Materials through Plaintiffs' "iBackup" account. (ECF No. 112-1, ¶ 15.) iBackup is a service provider that allows a user to "[b]ackup unlimited PCs, Macs and Linux devices to a single account." (*See* https://www.ibackup.com/online-backup-features/, last accessed November 7, 2023). Further, iBackup advertises that its application "maintains the history of changes made to all backed up files" and that "[t]he recent 10 versions of a file are available for restore." (*See* https://www.ibackup.com/backup-faq/#47 , last accessed November 13, 2023). This indicates that Plaintiffs should have provided multiple versions of Defendants' backup as part of the Disputed Materials and not only the most recent version. Based on the number and size of files on the hard drive received on November 7, and the identification of a significantly larger volume of data as existing in the so-called "Joint Database," it appears that neither Plaintiffs, nor their expert Mr. Demirkaya, produced all of the Disputed Materials they possess. Relevant here is that <u>none</u> of the trial exhibits that Defendants seek to exclude in this motion exist[5] in the records produced by the parties in discovery, or in the Disputed Materials drive transmitted by Plaintiffs last week.

As to Mr. Demirkaya's unusual declaration, the Court should be aware that various other

---

[5] Once Plaintiffs had finally produced the final batch of their proposed trial exhibits on November 10, Defendants had their IT consultant analyze the exhibits to see if any could be matched to documents produced in discovery, or available in emails in the Disputed Materials. 36 of Plaintiffs proposed trial exhibits are not in those materials, and the lack of accompanying metadata for many makes it impossible to identify their source. *See* [ANIL DECLARATION].

federal courts have openly questioned the accuracy and trustworthiness of Mr. Demirkaya's opinions and testimony, and have raised specific concerns that are already, or very well may become, present in this case. For example, in an opinion and order striking Mr. Demirkaya's expert opinion, one court wrote, in part, that: "Mr. Demirkaya's report is littered with unqualified legal conclusions from beginning to end," which "effectively render[ed] his opinion a would-be brief masquerading as an expert opinion," and that the remaining portions of the expert opinion that were not "explicit legal conclusions" were "substantially identical to the unfounded and hypothetical allegations and inferences made by plaintiff's counsel[.]" *246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, No. 09-cv-889 (NGG), 2011 WL 13254283, at *6 (E.D.N.Y. Apr. 1, 2011).

More importantly, one federal court has already directly called into question Mr. Demirkaya's unreliable and confusing testimony regarding metadata. Specifically, in an attorney disciplinary proceeding, the court found that Mr. Demirkaya "confuses metadata with data retained on a computer's hard drive even if the document is deleted. Metadata was never an issue in the hearing and [Mr. Demirkaya's] confusion about this being an issue further undermines the weight to be given his opinion." *In re Justice*, No. 1:11-mc-3, 2012 WL 2374677, at *27 (E.D. Tenn. June 22, 2012) (among several other issues with Mr. Demirkaya's opinion). While Defendants reserve all rights regarding Mr. Demirkaya's continued participation in this matter, these cases should give this Court pause before relying on Mr. Demirkaya's statements, to the extent Plaintiffs submit more in connection with any opposition to this motion.

C. *Exclusion is the Appropriate Remedy*

Here, the Court exercised its discretion in response to Defendants' request for a continuance, resulting from Plaintiffs' failures related to, among other things, the Disputed

Materials. The Court initially fashioned a remedy,[6] ordering Plaintiffs to produce the Disputed Materials and relevant metadata, trial exhibits, and relevant metadata by November 6, 2023 – one week before pre-trial submissions were due. Plaintiffs' failure to timely provide a complete set of trial exhibits, and refusal to provide applicable metadata related to trial exhibits, is a direct violation of the Court's November 2, 2023 Order, which has continued through today, November 13, 2023 when pre-trial submissions are due. As such, the Court should exercise its discretion to exclude exhibits produced following the Court's deadline and those produced without relevant and necessary metadata.

Exclusion is the appropriate remedy because Plaintiffs had no reasonable basis to ignore the Court's November 2, 2023 Order. Indeed, during a hearing earlier on November 2, Plaintiffs' counsel (inaccurately) claimed that "all of our trial exhibits have been exchanged," and that they "consist of three categories: [(1)] screenshots of software at issue in this case . . . [(2)] agreements, emails of the like, . . . [and (3)] documents given to our expert as foundation." (Bluestone Decl. ¶ 8 & Ex. A, at 18:6-23, 20:9-11). Clearly, Plaintiffs had internally identified their exhibits on November 2, 2023 when counsel advised the Court of these categories. Plaintiffs had adequate time to produce copies with metadata between the time of that hearing, and the November 6 deadline. The relatively small number of exhibits – a total of 23 – requiring the production of metadata, is something that Plaintiffs could have accomplished within the Court's deadlines. In fact, several pages of the 'screenshots' contained in PX-1, 2, 4 and/or 6-22, have references to October 25, 2023, which may be the date those pictures were taken.

---

[6] The Court's alternative remedy was identified in its November 9, 2023 Order (ECF No. 125), which invited Defendants to seek exclusion of Plaintiffs' proposed trial exhibits which were not produced in discovery or were part of the Disputed Materials. Defendants have briefed this issue in their Motion *In Limine* No. 2.

Any argument that Plaintiffs were unaware of what metadata was needed, similarly lacks merit. It is obvious that screenshots of apparent software, websites and an ESI attachment to an email would need to be produced with metadata. Indeed, Plaintiffs were made aware of this through filings related to the Disputed Materials, and also in Defendants' November 7, 2023 letter to the Court where the lack of exhibit-related metadata was expressly mentioned. (ECF No. 13.) Notwithstanding this notice and the obviousness of Plaintiffs' obligations under the Court's November 2 Order, no metadata was provided. In fact, Plaintiffs did not even attempt to provide any such metadata.

The identification and production on the day that objections and *in limine* motions are due to be filed is unreasonable and should lead to preclusion. However, this is what Plaintiffs have done with PX-39, in addition to their belated identification and production of a copy of PX-77, 78 and 79.

Simply stated, there is no reasonable excuse for Plaintiffs to have not complied with the Court's clear and concise requirements regarding the timely production of copies of trial exhibits and related metadata. Defendants will suffer prejudice if Plaintiffs are permitted to continue their violation of the Court's clear directives because they do not have the information required to fully present objections to the PDF representations of ESI included in the above referenced trial exhibits.[7] In addition, while PX-77, 78 and 79 were produced in discovery by Plaintiffs, their belated identification and production on November 10 was not only violative of the Court's deadline, but also creates undue surprise. Finally, the production of a new compilation PX-39 mere hours before the deadline to file *in limine* motions today, objections and the like is the very

---

[7] For clarity, Defendants do not seek to exclude the remainder of Plaintiffs' exhibits in this motion *in limine* because while many were produced late, it appears that metadata related to these exhibits is not relevant (although these exhibits may be subject of other *in limine* motions).

definition of surprise, especially when the exhibit is a compilation of ESI, email and unproduced files, without any metadata being provided to analyze the veracity of different components of the proposed exhibit. Aside from the fact that Defendants had no ability prior to trial to, among other things, test the authenticity and ask questions of the relevant witnesses about this (and the other) exhibits, Defendants will also be crippled to do so during trial now, without such metadata and with their dilatory production.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion *in limine* to exclude all of Redcell's documents on their exhibit list, based on Plaintiffs' violation of the Court's November 2, 2023 Order (ECF No. 111).

Dated: November 13, 2023  
New York, NY

Respectfully submitted,

GENOVA BURNS LLC

By: */s/ Charles J. Messina*  
Rajiv D. Parikh, Esq.  
Charles J. Messina, Esq.  
Lawrence Bluestone, Esq.  
*Attorneys for Defendants A.J. Trucco,*  
*Inc. and Trucconova, LLC*

## CERTIFICATE OF CONFERENCE OF COUNSEL

In accordance with Section 1(b)(ii) of the Court's Individual Trial Rules and Procedures, the undersigned certifies that the parties served letters regarding their position on the above issues on November 7, 2023 (ECF No. 113, 118).

Dated: November 13, 2023                     /s/ *Charles J. Messina*
                                                                    Charles J. Messina

17307230v2 (22605.010)