**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REDCELL CORP., and REDCELL SYSTEMS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> A.J. TRUCCO, INC. and TRUCCONOVA, LLC, <br><br> Defendants. | No. 1:20-cv-00018-JGLC-SLC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE PX-1, 2, 4-22, 24, 27, 29, 32, 33, 36, 38, 39, 43, 62, 66, 68, 75 AND THE INTRODUCTION OR USE OF ANY "DISPUTED MATERIALS" NOT PRODUCED DURING DISCOVERY FOR IMPEACHMENT**

Rajiv D. Parikh, Esq.
Lawrence Bluestone, Esq.
Charles J. Messina, Esq.
GENOVA BURNS LLC
115 Broadway, 15th Floor
New York, NY  10006
Phone: 212-566-7188
rparikh@genovaburns.com
lbluestone@genovaburns.com
cmessina@genovaburns.com

*Attorneys for Defendants A.J. Trucco, Inc. and Trucconova, LLC*

Defendants A.J. Trucco, Inc. and Trucconova, LLC (hereafter, "Trucco") respectfully submit this memorandum of law in support of their Motion *In Limine* No. 2, which seeks to exclude the introduction or use at trial of any "Disputed Materials" not produced in discovery. As the Court is aware, over half of Redcell's trial exhibits were not produced in discovery in any form.  In its November 9, 2023 Order (ECF No. 125), the Court concluded, based on both parties' submissions, that it is "undisputed that Redcell did not produce the Disputed Materials during discovery."[1] (Nov. 9, 2023 Order at 5.) Further, the Court determined that Redcell did not precisely identify the Disputed Materials in that:

> [t]hroughout discovery, Redcell referred to a "Joint Database" that it claimed both parties had access to. This resulted in understandable confusion by Trucco's former counsel that the Disputed Materials were certain shared documents that both parties possessed. In reality, the Disputed Materials are a backup copy of Trucco's server, a copy that Trucco did not have access to. As such, Redcell's description of the Disputed Materials throughout much of the discovery process did not put Trucco on notice as to what documents Redcell was specifically referring to.

*Id.* Since Redcell produced "only select documents from the Disputed Materials, Trucco reasonably assumed that Redcell had produced all of the documents from the Disputed Materials that Redcell intended to rely on at trial." *Id.*  In sum, "Trucco was not on notice regarding which documents within the Disputed Materials Redcell intended to use to support its claims at trial[,]" and only after receiving Redcell's exhibit list "did Trucco realize that Redcell intended to rely on additional documents from the Disputed Materials that Redcell had never produced." *Id.* at 6.

At the Court's invitation, Trucco respectfully moves, pursuant to Fed. R. Civ. P. 37, to preclude Redcell from using the below trial exhibits, which were not produced in discovery at trial

---

[1] Trucco incorporates by reference its Brief (ECF No. 119), and the declarations of Ralph R. Smith, 3rd (ECF No. 120); Rajiv D. Parikh (ECF No. 121), and Sasha LoPresti (ECF No. 122), which set forth in full the factual background surrounding the Disputed Materials, as that term is defined in the Court's November 9, 2023 Order (ECF No. 125).

for any purpose (including in their case-in-chief or for impeachment). In addition, the Court should

preclude Plaintiffs from using any other part of the Disputed Materials not produced in discovery

for impeachment during trial. As explained in detail below, Trucco was not in possession of the

Disputed Materials and would be highly prejudiced if Redcell were permitted to use these materials

at trial.

## ARGUMENT

**I.      The Court Should Preclude Redcell from Using Documents Not Produced In Discovery During Trial For Any Purpose.**

The Court should preclude Redcell under both Fed. R Civ. P 37(d)(1)(A)(ii) and 37(c) from

using the Disputed Materials that it failed to produce in discovery[2] at trial for any purpose.

Rule 37(d)(1)(A)(ii) permits preclusion of evidence if "a party, after being properly served with

interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers,

objections, or written response." *See Hart v. Westchester County Dep't of Social Services*, 160 F.

Supp. 2d 570, 579 (S.D.N.Y. 2001) (noting that Rule 37(d) extends the sanctioning powers of Rule

37(b)(2)(B) "to parties who do not respond to discovery requests."). Preclusion is justified under

this rule when the violation is "due to willfulness or bad faith, or [the violating party] is otherwise

culpable." *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir. 1991). As the

Court has already found, it is "undisputed that Redcell did not produce the Disputed Materials

during discovery." (Nov. 9, 2023 Order (ECF No. 125) at 5.) Redcell's use of the term "Joint

Database" "resulted in understandable confusion" on the part of Trucco's former counsel, and

which "did not put Trucco on notice as to what documents Redcell was specifically referring to."

*Id.* Further, that Redcell produced some of the Disputed Materials and not others, but was able to

---

[2] As set forth in more detail in Trucco's Motion *In Limine* No. 1, it appears that not all of the Disputed Materials have even yet been produced by Redcell.

produce a copy of the entire set of Disputed Materials on short notice, suggests that it could simply have produced a copy years ago. Rule 37 is intended to prevent this type of "sandbagging" of "an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y.2004)).

Rule 37(c), by contrast, does not require a finding of bad faith or culpability for the court to order preclusion. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."). The Court looks to four factors: (i) the party's explanation for the failure to comply with the disclosure requirement; (ii) the importance of the evidence to be precluded; (ii) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (iv) the possibility of a continuance.  *See Patterson v. Balsamico*, 440 F.3d 104, 118 (2d Cir. 2006). The Court has already addressed the first and fourth factors.  Although the Court found that Redcell's failure to precisely identify the Disputed Materials may have been unknowing, the Court need not find bad faith to order preclusion. *Design Strategies*, 469 F.3d at 296. Further, the Court has already rejected a request to adjourn the trial. (Nov. 9, 2023 Order (ECF No. 125) at 4-5.) As explained in detail further below, the second and third factors—the importance of the evidence and prejudice to Trucco—weigh decidedly in favor of preclusion.

## II.    34 of Redcell's Proposed Trial Exhibits Were Not Produced In Discovery and Trucco Was Not Otherwise in Possession of Them.

As detailed in the accompanying Declaration of Rajiv D. Parikh, Trucco's counsel have accumulated the documents produced by either party in discovery and have uploaded those documents in a document review database that permits counsel to search through the text and metadata for each document. A search of the documents produced in discovery by both parties reveals that 34 of Plaintiffs' exhibits were not produced at all in discovery. (Parikh Decl. ¶¶ 2-13.)

In addition, Defendants retained the services of D Cube Technologies ("D Cube"), an intelligence, e-discovery and forensics company, which analyzed Plaintiffs' exhibits, the Disputed Materials, the discovery materials, which Defendants loaded into their e-discovery platform. (Declaration of Anil Kona ("Kona Decl." ¶¶ 1-4; Parikh Decl. ¶ 12.)  D Cube was unable to compare Plaintiffs' Exhibits against the Disputed Documents because they were produced without metadata, including hash values.  (Kona Decl. ¶¶ 4-8.)  In addition, D Cube was unable to compare the software screen shots (PX-1 through PX-22) because they contained no metadata or other identifying information. (*Id.* ¶ 9.)  D Cube was able to search through the discovery documents in DISCO and were unable to locate the exhibits identified further, including the Alleged Software Screenshots,  Agreements, Correspondence and Communications, Financial Records, Front-End Website Screenshots, and Project Documentation. (*Id.* ¶¶ 11-12.)

### III.    Trucco Would Be Highly Prejudiced If Redcell Were Permitted to Use the Disputed Materials at Trial.

The unproduced Disputed Materials in Redcell's Exhibit List fall into six categories. As explained below, Trucco would suffer significant prejudice if Redcell were permitted to introduce or use these documents at trial, or to use any other of the hundreds of thousands of documents in the Disputed Materials for impeachment.

### 1.  Alleged Software Screenshots (PX-1, PX-2, and PX-4 through PX-22) (Ex. A)

Redcell's Exhibits PX-1, PX-2, PX-4, and PX-6 through PX-22 are alleged screenshots of the Plexus software. (*See* Ex. A.)[3] The belated production of the alleged screenshots of the software captured by Redcell profoundly prejudices Trucco's defense, particularly in contesting the claim

---

[3] All references to Exhibits are to those attached to the accompanying Parikh Declaration.  Exhibits PX-3 and PX-5 are user manuals, not screenshots; only PX-3 was produced during discovery, while PX-5 was not only never produced during discovery, but is also dated October 21, 2022, long after the parties' relationship ended and after discovery closed. The admission of PX-5 would prejudice Trucco in the same manner as the admission of the software screenshots.

that the depicted information qualifies as a trade secret or that it serves as evidence that trade secret protected software exists on Trucco's computer systems. What's even more concerning—considering continuing access to Trucco's system without Trucco's knowledge or consent—is the question of whether these screenshots were taken from Trucco's system, or another system altogether, or were planted in the iBackup system controlled solely by Redcell for purposes of this case. After an exhaustive search of Trucco's systems in place, the information depicted in these screenshots do not appear on Trucco's servers, so Trucco was not on notice of these exhibits before receiving them from Redcell on November 2, 2023. (*See* Declaration of Sasha LoPresti ("LoPresti Decl.") ¶¶ 4-11.)

Trucco was deprived of the opportunity to, among other things, question Redcell's witnesses about these screenshots, to conduct additional discovery to challenge the authenticity and accuracy of the screenshots, or to have the screenshots or whatever system they were generated from, be analyzed by a technical expert. Indeed, by producing only a PDF of the screenshot without any related metadata,[4] Trucco cannot confirm what computer the software was run on and even tell what computer the software is being run on; however, the screenshots are not of Trucco's computer systems. (*Id.* ¶ 9.)

If these documents had been produced in discovery, Trucco would have had the opportunity to conduct a technical examination, which could have analyzed the source code and might have revealed the information as something other than a trade secret (to the extent it was even on a Trucco computer). For instance, the screenshots might have shown features or functions that are common industry knowledge or publicly accessible, which would undermine Redcell's

---

[4] The Court ordered Redcell to provide all metadata related to its proposed trial exhibits by November 6, 2023. (ECF No. 111). Redcell has never done so, and Trucco has sought to exclude trial exhibits on that basis in Motion *In Limine* No. 1.

trade secret claim. *See* DTSA, 18 U.S.C. § 1839(3) (to qualify as trade secret, information must "not be[] readily ascertainable through proper means").

Compounding this issue, because Redcell did not produce these documents, Trucco did not have the opportunity to retain an expert in trade secret identification or software analysis, as there was no indication from the discovery actually produced by Redcell that such evidence would be presented at trial. The lack of expert examination severely limits Trucco's ability to challenge Plaintiffs' assertions, both technically and legally. An expert, for example, could have provided crucial insights into whether the screenshots show proprietary information, or simply depict standard elements of similar software in the industry.

Furthermore, the absence of timely access to these screenshots stymies Trucco's ability to prepare for cross-examination of Redcell's witnesses about the nature of the displayed information, and the measures taken to ensure its confidentiality which are key components of the defense strategy. Without timely production and examination of these screenshots, what they purport to represent and the underlying metadata, Trucco's defense is significantly disadvantaged.

There is also great risk that jurors will only hear one side of the story regarding the screen shots' validity and how they relate to the alleged trade secrets at issue, which would most likely lead to an unfair bias against Trucco. A well-informed jury decision is predicated on a balanced presentation from both sides, which is not possible if Trucco cannot contest Plaintiffs' claims with equal clarity and depth, due to Plaintiffs' gamesmanship during discovery.

## 2. Agreements (PX-24, PX-29, PX-33 and PX-39) (Ex. B)

Redcell's claim centers on its allegation that it had an oral understanding with Trucco about the licensing of the Plexus software. Trucco, by contrast, contends that the various agreements defined the parties' entire understanding, and establish that Redcell took no measures to protect

the secrecy of its alleged trade secrets.  Among the Disputed Materials not previously disclosed by

Redcell is a copy of the 2010 Software Development Agreement with a unique note on the

document, which was never produced in discovery. (*Compare* PX-24 (Ex. B) *with* DX-124 (Ex.

G).)[5] Other agreements are from different years that had not been produced by Redcell or Trucco

in discovery, and that Trucco has not located in its own files. (*See* LoPresti Decl. ¶ 12; *compare*

PX-29 (Sept. 23, 2013 Enterprise Service Agreement) (Ex. A) and PX-33 (Dec. 24, 2014

Enterprise Service Agreement) *with* DX-123 (Ex. H) (Oct. 23, 2012 Enterprise Service

Agreement).) Although Trucco may have been able to question witnesses generally, it could not

question witnesses about any of these additional agreements, or to seek discovery related to them.

Most egregious, is the 2018 Software Development Agreement marked by Redcell as

Exhibit PX-39.[6]  As explained further in Motion *In Limine* No. 3, a search of the materials

produced by Redcell, including the drive containing the Disputed Materials, reveals that this 2018

Agreement was never produced or present in an identified data source. Redcell's failure to produce

these purported agreements with Trucco, knowing it was not in either parties' discovery

productions, precluded Trucco from questioning witnesses on them, seeking additional

discoverable information related to them and severely prejudices Trucco's defense.  The Court

should bar Redcell from using the agreements that were not in Trucco's possession and were not

produced in discovery, i.e., PX-29, PX-33, and PX-39.  (*See* LoPresti Decl. ¶ 13.)

3.  **Correspondence and Communications (PX-27 and PX-75 (duplicate), PX-43) (Ex. C)**

The late-disclosed correspondence includes an email detailing an urgent operational issue

---

[5] Because PX-24 and DX-124 are otherwise identical other than the year handwritten on page 1, Trucco has suggested to Redcell that it simply replace its proposed exhibit 24 with DX-124, which would then render this request moot. Earlier today, Redcell declined.

[6] Today, November 13, 2023, Redcell belatedly produced a purported replacement PX-39 without any relevant metadata in violation of the Court's November 2, 2023 Order.

due to a system breach (PX-43), and two copies of a letter from 2013 written from Lucca Freezer

& Cold Storage ("Lucca") stating that Redcell developed Plexus to help their businesses (PX-27,

Px-75) (*See* Ex. C).  These records were not produced in discovery and should be excluded.

      ***Operational Email***: PX-43 is an email between Trucco's principal and a Redcell employee

(Hector Castro) in May 2019 right after the parties' relationship ended about a critical operational

issue involving a breach to Trucco's system. Although it is unclear what the specific relevance of

this email is to Redcell's DTSA claim, the prejudice that Trucco would face if it were admitted as

evidence in the case is apparent: Trucco had no ability to question Redcell's witnesses to explore

the email's significance. Trucco may have deposed Castro to explore, among other things (i) what

he knew about changes to Trucco's passwords, (ii) the nature of the data breach, (iii) who else was

involved in responding to the breach, (iv) what security protocols Redcell had implemented for

Trucco's system, and (v) whether Redcell acted in a diligent manner.

      ***Lucca Letter***:  Trucco's trial exhibits include two copies of a letter from 2013 from Rusty

Lucca (a witness identified on Redcell's witness list) (PX-27/PX-75 (Ex. C).)  The letter purports

to state that Redcell developed the Plexus system, and purports to recommend Redcell to other

companies. Redcell will attempt to use this exhibit in an effort to prove that Redcell owns the trade

secrets it seeks to prove. And, despite the seeming importance of these documents, Redcell once

again, knowing that Trucco did not have a copy in discovery, strategically avoided asking Trucco's

witnesses about them at depositions.  By not producing these documents in discovery, Trucco was

deprived of any opportunity to explore the context of these letters.  For instance, were they written

at Redcell's request?  Did Redcell draft the language? Did someone else sign on behalf of Lucca,

and was such execution ever authorized? Trucco was also not able to question Redcell's witnesses

about the meaning of the letter and how it was used.  Was it used for marketing purposes?  Who

was it shared with, and did Redcell disclose the software code to anyone it shared the letter with? Did any third party call Lucca about this letter or ask him about Redcell? The failure to disclose these documents in discovery substantially prejudices Trucco, and they should be excluded.

4. **Financial Records (PX-32 & PX-68) (Ex D)**

PX-32 is a series of invoices purportedly sent to Trucco dating between February 8, 2012 and August 29, 2018 (PX-32); and PX-68 is a chart seemingly showing Trucco's sales between 2014 and 2019 of different categories of fruit. (PX-68.)  The failure to produce the invoices (PX-32) is particularly egregious since Redcell elected to produce invoices to other companies like Lucca (Ex. I), and the invoices to Trucco would presumably be in Redcell's files beyond the Disputed Materials. The invoices reveal the details of the business transactions that are essential to verify the parties' dealings and to evaluate the accuracy of the financial claims at stake. Without a detailed review of each invoice, Trucco is unable to effectively challenge the substance of Redcell's damage calculations.  Further, Trucco never had the opportunity to depose Redcell's witnesses to challenge or question the way work was described in the invoices.  As to the revenue chart, Trucco was not able to provide this to its expert to assist in his analysis or to cross-examine Trucco's expert to further challenge his opinion.   The failure to produce these documents prejudices Trucco's ability to prepare for trial.

5. **Front-End Website Screenshots (PX- 36, PX-38, PX-62) (Ex. E)**

These documents include an alleged screenshot of the "distribution section" of Trucco's website (PX-36), a typed document purporting to be from Trucco's website (PX-38), and a purported screenshot from the login page for "Produce Connect" on Trucco's website (PX-62). These screenshots include indication that they were taken in 2023, *well after the end of discovery*. It is unclear if these screenshots are contained in the Disputed Materials, but they were not

produced in discovery and are provided without context regarding their origin or their relevance

to the case at hand. Trucco was deprived of the opportunity to conduct discovery related to these

images, to question witnesses or users of the software about the specific functions and purposes of

the displayed interfaces, to identify or produce extrinsic evidence related thereto, or to understand

the timeframe during which they were used (if at all).  The absence of context surrounding these

screenshots is particularly prejudicial; such information is essential to determine whether the

screenshots reveal proprietary features that could be considered trade secrets under the DTSA.

6. **Project Documentation (PX-66) (Ex. F)**

Finally, PX-66 (Ex F) is a "preliminary analysis" of the "AJ Trucco Project" dated

August 2007. Redcell has previously questioned the validity of the 2008 Software Development

Agreement (and filed an *in limine* motion about it) since no party had produced the referenced

Exhibit "A" from the 2008 Agreement. *See* DX-270 ¶ 3 (Ex. J).  PX-66 is exactly this Exhibit "A"

as it is labeled as such (on the first page), and specifically describes the application that Trucco

was requesting from Redcell.

Trucco will address Exhibit PX-66 further in the context of opposing Redcell's anticipated

*in limine* motion, but in lieu of precluding this exhibit, Redcell should be precluded from

questioning the validity of the 2008 agreement, since its production of Exhibit PX-66 would have

allowed Trucco to demonstrate that agreement's validity during discovery. Trucco also

respectfully requests that PX-66 be included as part of its Exhibit DX-270 (Ex. J), so that the jury

is shown the complete 2008 Agreement.

## CONCLUSION

For the foregoing reasons, Trucco respectfully requests that the Court grant Trucco's motion *in limine* to exclude PX-1, 2, 4-22, 24, 27, 29, 32, 33, 36, 38, 39, 43, 62, 66, 68, 75 and the use any Disputed Materials not produced in discovery for impeachment.

Dated:  November 13, 2023
      New York, NY

Respectfully submitted,

GENOVA BURNS LLC

By:  */s/ Lawrence Bluestone*
      Charles J. Messina, Esq.
      Lawrence Bluestone, Esq.
      GENOVA BURNS LLC
      Trinity Centre
      115 Broadway, 15th Floor
      New York, NY  10006
      Phone: 212-566-7188
      cmessina@genovaburns.com
      lbluestone@genovaburns.com
      *Attorneys for Defendants A.J. Trucco,*
      *Inc. and Trucconova, LLC*

17306957v3 (22605.010)