**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

REDCELL CORP., and REDCELL
SYSTEMS, LLC,

                Plaintiffs,

v.

A.J. TRUCCO, INC. and TRUCCONOVA,
LLC,

                Defendants.

No. 1:20-cv-00018-JGLC-SLC

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE**
**NO. 3 TO EXCLUDE THE INTRODUCTION OR USE OF PX-39 NOT PRODUCED**
**DURING DISCOVERY**

Rajiv D. Parikh, Esq.
Lawrence Bluestone, Esq.
Charles J. Messina, Esq.
GENOVA BURNS LLC
115 Broadway, 15th Floor
New York, NY  10006
Phone: 212-566-7188
rparikh@genovaburns.com
lbluestone@genovaburns.com
cmessina@genovaburns.com
*Attorneys for Defendants A.J. Trucco,*
*Inc. and Trucconova, LLC*

Defendants A.J. Trucco, Inc. and Trucconova, LLC (hereafter, "Defendants") respectfully submit this memorandum of law in support of their Motion *In Limine* No. 3 seeking to preclude the introduction or use at trial of the document marked by plaintiff Redcell Corp. and Redcell Systems, LLC's ("Plaintiffs") as Exhibit PX-39, which appears to be an executed version of a 2018 Software Development Agreement (the "2018 Agreement"), but which was not produced in discovery, and which Defendant does not otherwise possess. (**Exhibit 1**.)[1]

Indeed, the document identified as PX-39 was not included within the drive containing the "Disputed Materials," produced by Plaintiffs on November 7, 2023. Earlier today, mere hours before the parties' submissions were due, counsel for Plaintiffs sent a "replacement" version of Exhibit PX-39, which appended to the front of the 2018 Agreement: (i) an email from Deysi Cardona (a Redcell contractor) to Helder Molina, dated November 26, 2018, sending an unsigned draft of the 2018 Agreement; and (ii) an email chain between Helder Moina and Nick Pacia, from November 2018, which appears to be discussing the negotiation of the November 2018 Agreement. (**Exhibit 2**.) The emails between Molina and Pacia do not indicate they have an attachment and do not change that the executed 2018 Agreement was itself not produced in discovery.

Accordingly, to the extent the 2018 Agreement does not fall within the ambit of Defendants' Motion *In Limine* No. 1 or 2, Defendants submit this separate motion to exclude PX-39.

## ARGUMENT

### I.    The Court Should Preclude Redcell from Using the 2018 Agreement During Trial for Any Purpose.

The Court should preclude Redcell under both Fed. R Civ. P 37(d)(1)(A)(ii) and 37(c) from using the 2018 Agreement that it failed to produce in discovery at trial (either as affirmative

---

[1] Exhibits are to the accompanying Declaration of Lawrence Bluestone, Esq. unless otherwise noted.

evidence or for impeachment).

As a threshold matter, a search of the documents produced in discovery by both parties reveals that the 2018 Agreement was not produced in discovery. (Declaration of Rajiv D. Parikh in support of Motion in Limine No. 2 ("Parikh Decl.") ¶¶ 2-13.) In addition, Defendants retained the services of D Cube Technologies ("D Cube"), an intelligence, e-discovery and forensics company, which analyzed Plaintiffs' exhibits, the Disputed Materials, and the discovery materials, which Defendants loaded into their e-discovery platform. (Declaration of Anil Kona ("Kona Decl." ¶¶ 1-4; Parikh Decl. ¶ 12.) D Cube was able to search through the discovery documents in DISCO and was unable to locate numerous exhibits, including PX-39. (Kona Decl. ¶¶ 11-12.)

Trucco did not otherwise possess the executed 2018 Agreement, and only received a copy of this document in conjunction with the mediation of this matter in October 2023. (*See* Nov. 7, 2023 Decl. of Rajiv D. Parikh ¶ 40 (ECF No. 121); Declaration of Sasha LoPresti ¶ 13.) The only similar document produced by Redcell in discovery was a draft of an unsigned agreement attached to an email exchange between Redcell principal Helder Molina, and Redcell contractor Claudia Melany Zepeda Saravia. (*See* Ex. 2.) There is no indication that this draft was ever received or acknowledged by Trucco principal Nick Pacia, nor is there any evidence to suggest it was executed by any representative of Trucco. In addition, the emails between Pacia and Molina attached to Plaintiffs' revised PX-39 does not contain an attachment, do not include the executed version of the 2018 Agreement and do not indicate that it is this agreement that is being discussed. *Id.*

Rule 37(d)(1)(A)(ii) permits preclusion of evidence if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." *See Hart v. Westchester County Dep't of Social Services*, 160 F. Supp. 2d 570, 579 (S.D.N.Y. 2001) (noting that Rule 37(d) extends the sanctioning powers

of Rule 37(b)(2)(B) "to parties who do not respond to discovery requests."). Preclusion is justified under this rule when the violation is "due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir. 1991).

As the Court has already found, it is "undisputed that Redcell did not produce the Disputed Materials during discovery." (Nov. 9, 2023 Order (ECF No. 125) at 5.) Similarly, it cannot be disputed that Redcell did not produce the 2018 Agreement during discovery, as it was not contained in any of the document or ESI productions that Redcell made to Trucco. As the scope and terms of the parties' contractual relations has been an important issue in this matter from the outset, Redcell's belated production of the 2018 Agreement cannot be excused.[2] Rule 37 is intended to prevent this type of "sandbagging" of "an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y.2004)).

Rule 37(c), by contrast, does not require a finding of bad faith or culpability for the court to order preclusion. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule."). The Court looks to four factors: (i) the party's explanation for the failure to comply with the disclosure requirement; (ii) the importance of the evidence to be precluded; (ii) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (iv) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 118 (2d Cir. 2006).

Here, Redcell has not proffered any explanation as to why it failed to produce the 2018

---

[2] We note that both Nick Pacia and Sasha LoPresti were examined extensively at their depositions by Redcell's counsel regarding various actual or contemplated agreements between the parties, yet Redcell did not examine either of them or any other witness regarding the 2018 Agreement.

Agreement during discovery, or even question any witnesses about the alleged existence of it. Indeed, since Redcell now claims the 2018 Agreement underpinned its recently dismissed breach of contract claim (as opposed to an earlier agreement which is what Trucco understood this claim to be about), why would Redcell never produce a copy in discovery or ask any witness a single question regarding the agreement Redcell claimed was breached? The only logical answer is gamesmanship intended to sandbag Trucco at trial.

As to the importance of the 2018 Agreement, Redcell now claims this 2018 Agreement is a key part of its DTSA claim. (*See, e.g.*, Joint Pretrial Order at 3 (Redcell contends in its summary of claims that "[t]he taking of Redcell's employees and personnel violated a key provision of a written 2018 agreement between Trucco and Redcell.").) However, this alone is insufficient to avoid preclusion. *See, e.g., In re Cousins Fish Market, Inc.*, 667 F. App'x 334, 335 (2d Cir. 2016) (affirming Bankruptcy Court's exclusion of evidence produced after close of discovery and weeks before trial, even though the evidence was "important" and that the adversary proceeding defendant "would be unlikely to prove its affirmative defensed without it."); *Haas v. Delaware and Hudson Ry. Co.*, 282 Fed Appx. 84, 85-87 (2d Cir. 2008) (precluding "evidence of obvious importance for [plaintiff's] claim"). And the Court has already made clear there will be no continuance of the trial date. (*See* ECF No. 125 at 4-5.)

## II.    Trucco Would Be Highly Prejudiced If Redcell Were Permitted to Use the 2018 Agreement at Trial.

With respect to the third factor, Defendants would be highly prejudiced if Plaintiffs were allowed to use the 2018 Agreement at trial, either as affirmative evidence or for impeachment. Plaintiff's failure to produce the 2018 Agreement during discovery prevented Defendants from examining the party witnesses regarding its contents and the circumstances of its execution, including the intent and knowledge of the parties, significantly prejudicing Defendants' defense in

this case where the legal agreements are central to understanding the parties' relationship and the context of the dispute.

The crux of Redcell's claim rests on the assertion that Trucco was fully aware of the extent to which the Plexus software was allegedly installed and used on Trucco's servers. Contrary to this, Trucco's stance is that Nick Pacia had limited knowledge regarding the presence and use of the Plexus IMP system within its technological environment.

These are important, contested issues, as Defendants' understanding – based on the facts that Defendant did not possess an executed copy of the 2018 Agreement, and that Redcell had not produced such a document – was that the 2018 Agreement did not exist, because the parties never assented to the terms of the draft agreement. Indeed, the communications between Nick Pacia and Helder Molina leading up to the alleged execution of the 2018 Agreement on November 28, 2018, cast substantial doubt on whether Pacia was inclined to assent to, and was adequately informed of, the terms of the agreement. The WhatsApp text messages exchanged between the two parties suggest that Molina doggedly pursued Pacia regarding execution of the document, and that Molina may have misrepresented to Pacia that the document in question was akin to prior agreements— standard, routine, and without significant changes – in order to induce Pacia to execute it:

> [11/14/18, 3:11:30 PM] Helder: Nick I have not received the software support Agreement the check
>
> [11/14/18, 3:11:50 PM] Helder: Please let me know if i can go to pick it up now
>
> [11/14/18, 3:38:08 PM] Nick Pacia: What agreements I never saw
>
> [11/14/18, 3:38:24 PM] Nick Pacia: And for what
>
> [11/14/18, 3:49:31 PM] Helder: I sent it to twice
>
> [11/14/18, 6:39:52 PM] Nick Pacia: Need to see what are u talking about
>
> [11/14/18, 6:40:05 PM] Nick Pacia: Been little busy lately
>
> [11/15/18, 7:23:22 AM] Helder: Me too
>
> [11/15/18, 7:26:07 AM] Helder: Well, im going to be at the terminal by noon. I will

stop by and pick it up

[11/15/18, 9:53:31 AM] Nick Pacia: Not today

[11/15/18, 9:53:51 AM] Nick Pacia: Not until I reviewed what u send me

**[11/15/18, 9:57:21 AM] Helder:Ie same software support Agreement you had**

[11/15/18, 9:58:05 AM] Helder: Its just foe software

[11/15/18, 9:59:14 AM] Helder: I will cover the hours you indid not bill you that you already used up to No$^{ve}$mber 1st

[11/15/18, 9:59:33 AM] Helder: This way we have a clean start

[11/17/18, 8:44:46 AM] Nick Pacia: Monday will review this and see what u send

[11/17/18, 12:13:40 PM] Helder: Let me know tIis way i can go to the terminal to pick it up

[11/19/18, 1:14:30 PM] Helder: Well?

[11/28/18, 1:00:58 PM] Helder: Im downstairs let me know when i can come up

[11/28/18, 1:15:41 PM] Helder: ?

[11/29/18, 10:47:47 AM] Helder: Nick If you have to wait for 6 months for produce pro to do the IMP for you can you hove us the WMS?

[11/29/18, 10:48:09 AM] Helder: I told you I would give a huge discount

**[11/29/18, 10:48:43 AM] Helder: Let make a deal**

(**Exhibit 3**) (emphasis added)

In reality, however, the 2018 Agreement differs substantially and materially from the draft agreement or the parties' prior agreements. The 2018 Agreement outlines Redcell's commitment to provide software support for Plexus IMP. The agreement further delineates services that are excluded, including "[p]erforming developments of additional features and functions not standard with the version," developing "costume reports not included in the system," and "[i]ntegration with any system including API or EDI." (Ex. 1.) The late emergence of the signed 2018 Agreement, with its explicit references to Plexus IMP and detailed clauses on excluded services, should at very least raise suspicions, as the document is a critical piece of evidence that could substantially influence the Court's understanding of both parties' awareness and the extent of

Plexus IMP's alleged implementation.

Furthermore, conversations as late as November 29, 2018, indicate ongoing negotiations and discussions about potential other arrangements or agreements unrelated to the 2018 Agreement. This ongoing dialogue about future arrangements implies that the 2018 Agreement may not have been finalized or executed by Pacia at that point or ever. The belated production of this agreement and the lack of opportunity for Trucco to interrogate witnesses or verify the signature severely prejudices Trucco's position in this litigation. For example, Trucco has been stripped of the opportunity to explore through deposition testimony:

- who executed the agreement, when, where and under what circumstances;

- the extent of Redcell's software support under the agreement and what that entailed regarding Plexus IMP;

- whether the excluded services mentioned in the agreement suggest that Plexus IMP's installation was limited or not as extensive as Redcell claims; and

- the nature of any additional features, custom reports, or integrations that were or were not part of the standard Plexus IMP package allegedly installed on Trucco's servers.

This inability to probe the 2018 Agreement's terms leaves Trucco without critical evidence that could demonstrate a lack of comprehensive knowledge or control over the Plexus IMP software alleged to be a trade secret. Trucco's defense strategy, predicated on challenging the extent of Plexus's alleged installation and use, is thus significantly compromised.

Second, the absence of a signature or any acknowledgment during the discovery phase deprived Trucco of the crucial opportunity to verify the authenticity of the purported agreement and to confirm its legal enforceability. Indeed, given the lack of any confirmatory response or signature from Nick Pacia, coupled with the absence of any mention during discovery, it is highly

plausible that Pacia never executed this document. Furthermore, the substantive content of this draft agreement deviates markedly from other contracts previously executed between Redcell and Trucco. Such discrepancies raise significant questions about the nature and intent of this document, which Trucco should have had the opportunity to explore through depositions. The missed chance to question relevant parties about this divergent agreement format—its origins, its terms, and its departure from established contractual patterns—leaves Trucco unable to challenge its validity and relevance effectively. This is a result of Redcell's failure to produce this document in discovery.

Additionally, Redcell's failure to produce this 2018 Agreement at all, when it knew that it was not otherwise in the discovery productions, precluded Trucco from questioning witnesses on this agreement and severely prejudices Trucco's ability to defend against Redcell's DTSA claim, including cross-examining Redcell's witnesses about the protective measures that Redcell did and did not put into place to protect its alleged trade secrets.  It is bizarre that the 2018 Agreement contains a critical "No Solicitation of Employees" section, which bears directly on Redcell's now withdrawn breach of contract claim, yet Redcell did not question witnesses Nick Pacia, Sasha LoPresti or Jean Paul Arce on this provision (or the entire agreement) during their depositions. This suggests a strategic decision to withhold the agreement to gain an unfair litigation advantage, to the extent it even existed during the time.

Given these missed opportunities for thorough investigation and the surprise assertion of the agreement's importance, Trucco faces an untenable situation. The defense is now confronted with a central claim element that it had no opportunity to explore, analyze, or challenge. Moreover, the jury's ability to understand the dispute and make informed decisions is jeopardized when critical evidence is introduced without adequate explanation or context. If Trucco is unable to present a coherent narrative due to the late emergence of the 2018 Agreement, it will result in jury

confusion, and potentially leading to an unfair verdict based on incomplete information.

## **CONCLUSION**

For the foregoing reasons, Trucco respectfully requests that the Court grant Trucco's motion *in limine* to exclude PX-39 as it was not produced in discovery.

Dated:  November 13, 2023                    Respectfully submitted,
        New York, NY

GENOVA BURNS LLC

By:    */s/ Lawrence Bluestone*
        Charles J. Messina, Esq.
        Lawrence Bluestone, Esq.
        GENOVA BURNS LLC
        Trinity Centre
        115 Broadway, 15th Floor
        New York, NY  10006
        Phone: 212-566-7188
        cmessina@genovaburns.com
        lbluestone@genovaburns.com
        *Attorneys for Defendants A.J. Trucco,*
        *Inc. and Trucconova, LLC*

17306472v6 (22605.010)