**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

REDCELL CORP., and REDCELL
SYSTEMS, LLC,

                   Plaintiffs,

v.

A.J. TRUCCO, INC. and TRUCCONOVA,
LLC,

                   Defendants.

No. 1:20-cv-00018-JGLC-SLC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE***
**NO. 4 TO EXCLUDE EVIDENCE AND TESTIMONY RELATED SETTLEMENT**
**COMMUNICATIONS IN MAY 2019 (EXHIBITS PX-44, PX-46 & PX-47)**

Rajiv D. Parikh, Esq.
Charles J. Messina, Esq.
Lawrence Bluestone, Esq.
**GENOVA BURNS LLC**
115 Broadway, 15th Floor
New York, NY  10006
Phone: 212-566-7188
rparikh@genovaburns.com
cmessina@genovaburns.com
lbluestone@genovaburns.com

*Attorneys for Defendants A.J. Trucco,*
*Inc. and Trucconova, LLC*

Defendants A.J. Trucco, Inc. and Trucconova, LLC (hereafter, "Trucco") respectfully submit this Memorandum of Law in support of their Motion *In Limine* No. 4 to exclude evidence and testimony relating to settlement communications between the parties in May 2019 (including Exhibits PX-44, PX-46, and PX-47) under Fed. R. Evid. 408 and as unduly prejudicial under Fed. R. Evid. 403.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs Redcell Corp. and Redcell Systems, LLC ("Plaintiffs" or "Redcell") provided software development, IT support and maintenance, and logistics services for Trucco from 2008 to 2018. "The business relationship between Trucco and Redcell ended in or around February 2019" (Compl (ECF No. 8) ¶ 9); and Redcell alleges that Trucco misappropriated trade secrets allegedly owned by Redcell relating to certain software that Redcell calls "Plexus." (*Id.* ¶ 84.) Redcell also alleges that Trucco improperly solicited three of its former employees/contractors, Jean Paul Acre, Deysi Marianela Cardona Valladres and Claudia Melany Zepeda Saravia, which Redcell contends constitutes evidence that Trucco misappropriated Redcell's trade secrets by "improper means." (*Id.* ¶¶ 35, 38, 59-60, 68-72.)

In May 2019, after the parties' business relationship ended, Redcell had already accused Trucco of improperly poaching its employees. The parties' principals, Helder Molina of Redcell and Nick Pacia of Trucco, communicated by email and "WhatsApp" and had one in-person meeting to discuss a resolution to their disagreement, with Molina circulating several proposed settlement agreements. Indeed, it appears that Molina may have covertly made an audio recording of the in-person settlement meeting with Pacia. Redcell has indicated that it intends to introduce into evidence two categories of documents relating to these settlement discussions (and to elicit testimony regarding these documents and communications):

1. A proposed Settlement Agreement circulated by Molina to Pacia, dated May 6, 2019

(**Exhibits 1** (marked as Exhibit PX-44)).[1]

2. Internal communications between Pacia and Sasha LoPresti, Trucco's Vice President of Operations, commenting on and circulating redline edits to the terms of the proposed Settlement Agreements. (**Exhibits 2 - 3** (marked as Exhibits, PX-46, and PX-47).)[2]

Redcell intends to introduce these exhibits for purposes of showing two elements of its Defend Trade Secrets Act (DTSA) claim: that there was a prior, oral agreement between Trucco and Redcell to license the Plexus software and that Trucco improperly used the Plexus software in violation of that agreement or through improper means.[3]

The complete record of communications between the parties in May 2019, including contemporaneous emails and WhatsApp communications (relevant portions of which are attached as **Exhibit 5**); and a secret recording Molina made of a meeting between him and Pacia (a certified transcript of which is attached as **Exhibit 6**), show unequivocally that the parties were discussing the settlement of a dispute. Specifically, Redcell alleges that the relationship between the parties ended in February 2019. (*See* Compl. ¶ 9.) The relevant WhatsApp communications between Molina and Pacia began on April 30, 2019, with Molina asking Pacia to meet with him. (Ex. 6 at REDCELL PDFS 0066296.) On May 7, 2019, Molina sent Pacia the first of several proposed settlement agreements (Ex. 1 (PX-44)), and a few hours later, Molina messaged Pacia that "it will be [sic] a quality agreement with an option to renew and if not renew en [sic] option to hire and **release with a termination fee.**" (Ex. 6 at REDCELL PDFS 066297 (emphasis added).) Molina indicated that he had consulted with a law firm about the agreement (*id.*), which specifically related

---

[1]  Referenced exhibits are to the accompanying Declaration of Lawrence Bluestone, Esq.

[2]  Ms. LoPresti is a law school graduate, but not a member of the bar or a practicing attorney. (*See* LoPresti Dep. Tr. at 8:3-9:10 (relevant excerpts attached as **Exhibit 4**).)

[3] *See* DTSA, 18 U.S.C. 1839(5) & (6) (requiring plaintiff to prove that trade secret was "acquired by improper means," which includes "misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy.") In addition, Redcell seeks to use this evidence demonstrate Trucco's culpability for purposes of seeking punitive damages. *See* DTSA 18 U.S.C. § 1836(b)(3)(C) (allowing "exemplary" damages if plaintiff demonstrates "the trade secret is willfully and maliciously misappropriated.").

to Redcell's claim that Trucco was improperly trying to hire Cardona, Zepeda, and Arce, and

Molina.  With respect to that claim, Molina proposed the following "release":

> Redcell agrees that the hiring of any of its employees by A.J. Trucco, Inc. shall not be deemed to be an interference by A.J. Trucco, Inc. with the business of Redcell, and ***Redcell shall not commence any litigation against A.J. Trucco, Inc. arising solely out of such hirings***.

(Ex. 1, ¶ Fifth (emphasis added).)  During his deposition, Molina admitted that he and Pacia were

negotiating for a potential "mutual release" relating to claims against one another, and that he had

consulted with an attorney to review the proposed settlement agreement.  (Molina Dep. Tr. 241:21-

248:17; relevant excerpts are attached as **Exhibit 7**).

After receiving the proposed settlement agreement, Pacia forwarded it to LoPresti, who

edited and commented on it to Pacia in anticipation of discussing it with Molina. (Ex. 1.)  While

LoPresti was not functioning as an attorney for Trucco, she is a law school graduate. When

questioned about why Pacia sent the agreement to her, LoPresti confirmed:  "Generally, I was just

assisting Nick in trying to settle a dispute between Trucco and Redcell. (*See* LoPresti Dep. Tr. (Ex.

4) at 41:16-22.)  Pacia also understood LoPresti's involvement, indicating to her directly that Pacia

was looking for a broad release, "like we did with accounttempt [a staffing company]." *Id.*

As someone with legal training, LoPresti revised Molina's proposed agreement

substantially, titled the agreement, "General Release and Settlement Agreement," and added recital

language indicating that Trucco "denies and contests each claim asserted by Redcell and further

denies any and all liability to Redcell" and:

> WHEREAS, Trucco and Redcell desire to settle fully, permanently and finally all differences among them for any event related to, arising out of, or in connection with, including without any limitation, any and all claims relating to the hiring by Trucco of Marianela Cardona, Melany Zepeda, and Jeanpaul Arce ("Hiring Claims"), and this Agreement shall constitute the good faith settlement of all Redcell claims and causes of action which may exist against Trucco and/or any of its affiliates, and

3

(Ex. 2 (PX-46) at ¶ 4.)

Pacia and Molina messaged each other on WhatsApp between May 5 and May 7, 2019, to set up a time for Molina to come to Trucco's offices to discuss the proposed settlement agreement. (Ex. 5 at REDCELL PDFS 066297.) Molina recorded the conversation, which, although undated, involves a discussion of LoPresti's May 7, 2019 proposed edits to the agreement.  Molina began by talking about Pacia's proposal to switch to new software from ProducePro and whether or not Pacia would be able to continue using the code from Truccos' IMP System (which Redcell claims is Plexus) – the core of the dispute between the parties. (*See, e.g.,* Ex. 6 at 2:9-23.)  Molina eventually expressed that he did not understand some of the terms in LoPresti's new agreement and that he's "got to give it to [his] attorney." (Ex. 6 at 3:17-18.)  Molina and Pacia discussed the need to "settle" repeatedly and Molina explained that he wanted to enter into the agreement because he didn't "want any argument.  I don't want to fight. . . . So the only thing that, look, the only thing that I'm saying like I agree on that; I agree on that because I said, look, its fine.  I wanted to.  I'm the type of guy who was like, I don't know.  I don't want no confrontation." (*Id.* at 10:2-11.)  Molina explained again that he "wants to move on" (*id.* at 21:11-2); and explained that the language in his proposed Paragraph Fifth (quoted *supra*) was intended to be a "release." (*Id.* at 23:17-24:16.)[4]

Molina then expressed that he did not like the agreement Pacia and LoPresti proposed and,

---

[4]    PACIA: But there is no release here. Where is the release?
MOLINA: It says here, okay, in addition to the penalties, Redcell further. . . .
PACIA: There's no release.
MOLINA: Present, beginning,  okay. With that shall not be deemed to be  interference by Trucco with the business of  Redcell to not commence –
PACIA: 2 you did you go.
MOLINA: -- in any litigation in  use of solely and such, yeah, it is very  specifically that I should never -- that I should never sue you for pursuing that. It says very clear on hiring. It says - -  right here very clear, "with the business of result and result should not commence in  litigation agent Trucco, Inc arising solely out of this such hiring.

after the meeting, on May 15, 2019, sent a new version of the agreement, titled by Molina: "General Release and Settlement Agreement by and between the Parties." (**Exhibit 8**). Molina's proposed agreement discusses "a controversy between the parties" about money being due "for unauthorized use of [Redcell] employees to benefit the business interest of [Trucco]." (*Id.* ¶5.) The agreement proposes a monetary payment "without concession" by Trucco and suggests a release for all of the "Hiring Claims.' (*Id.* ¶¶ 6-7.) Molina then proposed that Trucco agree "not to use the licensed code of Redcell's 'Plexus IMP' for distribution or any form of resale or sharing" and that "[t]he future developed child code from the original version code is only for [Trucco] to build the new software for internal use in its operation and never for commercial use." (*Id.* ¶¶ 8-9.) Pacia responded to Molina on May 17, 2019, sending a revised version of the Settlement Agreement that LoPresti had drafted and, it appears, the parties thereafter stopped discussions. (Ex. 3.)

## LEGAL ARGUMENT

## I.    The Court Should Exclude the Settlement Communications Under FRE 408.

Under Rule 408, evidence "relating to the furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim" as well as "conduct or a statement made during compromise negotiations about the claim," is inadmissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior written statement or a contradiction" FRE 408(a). This rule furthers "the public policy of encouraging settlements and avoiding wasteful litigation . . . ." *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989).

Rule 408 excludes evidence whether or not the parties' discussions resulted in a settlement, so long as it related to efforts to resolve a dispute. *See, e.g., Playboy Enterprises v. Chuckleberry Publ'g, Inc.,* 687 F.2d 563, 568–69 (2d Cir.1982) (barring use of settlement evidence to establish

validity or invalidity trademark infringement claim); *7-Eleven, Inc. v. Minhas*, No. 11-CV-5455, 2015 WL 3794475, at \*6 (E.D.N.Y. June 17, 2015) (excluding proposed settlement agreement relating to allegation of breach of franchise agreement); *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 CIV. 0142, 2013 WL 5912236, at \*4 (S.D.N.Y. Nov. 2, 2013) (excluding evidence of proposed offer for severance pay to employee under FRE 408); *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F. Supp. 161, 163-65 (S.D.N.Y. 1991) (excluding license agreement proposed after allegation of patent infringement before litigation was filed).

"The predicate for application of Rule 408 is that the offer or payment be part of a resolution of a 'disputed claim'. This term does not require litigation or even the threat of litigation. It applies 'where an actual dispute or a difference of opinion exists, rather than when discussions crystallize to the point of threatened litigation.'" *Fitzpatrick,* 2013 WL 5912236, at \*4 (quoting *Affiliated Mfrs., Inc. v. Aluminum Co. Of America*, 56 F.3d 521, 527 (3d Cir. 1995)).  "All that is needed for Rule 408 to apply is an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim." *Alpex Computer Corp.*, 770 F. Supp. at 163.

### A.    The Proposed Settlement Agreement (PX-44) Relates to a Dispute and Is Inadmissible under Rule 408.

The proposed settlement agreement (PX-44) and testimony about the communications between Redcell and Trucco about the proposed settlement agreement is inadmissible under a straightforward application of FRE 408(a). The documents (and testimony about them, their drafting and edits to them) demonstrate unequivocally that there was already a dispute or "difference of opinion" between Trucco and Redcell about Trucco's continuing use of what Redcell considered to be its Plexus software, and Trucco's alleged hiring of former Redcell contractors. (*See supra* at 2-5.)

As explained above, the discussions and proposed settlement agreements relate to this

ongoing dispute between Redcell and Trucco and they constitute quintessential settlement communications: an offer to pay money, in exchange for a release of claims. As Judge Karas explained: "if an offer to pay monies Plaintiff believed were due to him in exchange for a release from all legal claims is not a statement made during 'compromise negotiations,' then the Court is not sure that anything would be." *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 456 n.4 (S.D.N.Y. 2010).

Moreover, Plaintiffs cannot rescue this evidence by suggesting it is being offered for "another purpose" than to prove or disprove the validity of their claim. *Trebor Sportswear*, 865 F.2d at 510. Redcell seeks to offer this evidence to **specifically prove elements of its misappropriation of trade secrets claim**, *i.e.*, that Trucco misappropriated Redcell's trade secrets "by improper means." *See, e.g.*, *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 255 (S.D.N.Y. 2021), *reconsideration denied*, No. 18-CV-5075, 2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) (misappropriation of trade secret under DTSA requires proof of acquisition or use "by improper means"). Specifically, Redcell is seeking to use the Settlement Agreements and communications to prove (1) that there was an oral license for Trucco's use of the allege trade secrets—a primary dispute in this case—and (2) that Trucco's alleged solicitation of Redcell's chief software programmer and other key employees is evidence of its improper means of acquisition of the trade secret. Thus, this evidence (and testimony about it) should be excluded under Rule 408.

**B.    Internal Communications between Pacia and LoPresti about the Offers of Compromise (PX-46 & PX-47) Should Also Be Excluded under FRE 408.**

Rule 408 also excludes from evidence internal communications if they were made "in the course of an effort to compromise." *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir.

1981); *Penny v. Winthrop-Univ. Hosp.*, 883 F. Supp. 839, 848 (E.D.NY. 1995) (excluding under FRE 408 internal memorandum drafted by the president to the HR department, listing potential jobs for a party in an employment dispute which was created for purposes of advancing settlement negotiations).[5]  There is no requirement that the document or work product be communicated to the other party if it was created specifically for the purpose of furthering a settlement discussion and no requirement that the document or work product involve the work of an attorney; "[t]he spirit of the Rule, as recognized by several circuits and as set forth in the commentary to the Rule, supports the exclusion of certain work product, ***internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party***." *See E.E.O.C. v. UMB Bank Fin. Corp.,* 558 F.3d 784, 791 (8th Cir. 2009) (emphasis added); *see Penny*, 883 F. Supp. at 848 (non-privileged business memorandum).

Here, LoPresti's communications with Pacia and the drafts and comments to draft Settlement Agreement they circulated were specifically part of the efforts to settle and resolve the dispute with Redcell before litigation.  (*See* Exs. 2 – 3.) Permitting the use of such evidence would undermine the purpose of Rule 408, which is to encourage parties like Trucco to pursue settlement. As such, this evidence and testimony about it should be excluded.

## II.    The Court Should Exclude the Settlement Evidence As Unduly Prejudicial Under FRE 403.

If the Court does not exclude the evidence under Rule 408, it should nonetheless exclude it under Rule 403 because its probative value is substantially outweighed by the potential for unfair prejudice to Trucco and confusion to the jury.  Evidence that is otherwise admissible is subject to

---

[5] *See also Affiliated Mfrs.,* 56 F.3d at 529 (excluding internal report made by party in connection with efforts to negotiate settlement under FRE 408); *Blu-J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (internal independent evaluation excluded from evidence under FRE 408 because it was "intended to be part of the negotiations toward compromise"); *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1482 (7th Cir. 1990) (internal comments and drafts of settlement agreements should be excluded under FRE 408 because they are "part of a settlement attempt.").

the probative-prejudice balancing analysis provided in Rule 403 and district courts have broad discretion in applying the probative-prejudice balancing test. *See, e.g., U.S. v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010). "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.'" *Bensen v. Am. Ultramar Ltd.*, No. 92-CV-4420, 1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)).

Given the high risk of prejudice, courts have excluded evidence under Rule 403 even if there would be a permissible basis to allow for its admission under an exception to Rule 408. *See, e.g., MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (excluding evidence of settlement agreement in prior case as unfairly prejudicial and because settlement agreements "carry little evidentiary weight because they are too tightly bound to the incentive to avoid litigation to cast much light on the underlying merits of the case" without reaching Rule 408 analysis); *Sanders v. Madison Sq. Garden, L.P.*, 525 F. Supp. 2d 364, 369 (S.D.N.Y. 2007) (excluding settlement communications as unduly prejudicial under Rule 403 even when offered for a legitimate purpose under Rule 408 because "[e]ven if the evidence is not excluded definitively by Rule 408, like any evidence it must pass Rule 403's test: that is, the probative value of the evidence must exceed any prejudicial impact of the evidence in order for it to be admissible.  The contrary is true here.") (quotation and citation omitted); *SourceOne Dental, Inc. v. Patterson Cos, Inc.,* No. 15-CV-5440 (BMC), 2019 WL 13422976, at *1 (E.D.N.Y. Sept. 9, 2019) ("[E]ven if this evidence were theoretically admissible under Rule 408, it would be unfairly prejudicial under Rule 403.").

Redcell seeks to use these settlement-related communications to impute to Trucco a

nefarious purpose and create the inference that because Trucco was willing to pay Redcell to resolve Redcell's "Hiring Claims" and acknowledge that it used Redcell's proprietary software under an existing license agreement, Redcell's claims must be true.  But "disputes are often settled for reasons having nothing to do with the merits of a claim." *Korn, Womack, Stern & Assocs., Inc. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 265263, at \*6 (6th Cir. 1994) (Table).  And "[t]he potential impact of evidence regarding a settlement agreement with regard to a determination of liability is profound. It does not tax the imagination to envision the juror who retires to deliberate with the notion that if the defendants had done nothing wrong, they would not have paid the money back." *United States v. Hays*, 872 F.2d 582, 589 (5th Cir. 1989).  Thus, the risk of prejudice is severe because the jury will not distinguish between Trucco's efforts to settle a dispute to avoid the cost, and uncertainties of litigation and may impute liability based solely on these statements.

By contrast, the probative value of these documents is minimal.  There is no reference to any specific trade secrets, just software generally (Ex. 1-3), so any inference that Trucco was admitting there was a prior licensing agreement to the parties, or that Redcell owns proprietary trade secrets on the Plexus software, is tenuous.  Thus, the Court should also exclude this evidence under Rule 403 as unduly prejudicial.

## CONCLUSION

For the foregoing reasons, Trucco respectfully requests that the Court grant Trucco's motion *in limine* to exclude evidence and testimony related to the Settlement Agreement under FRE 408 or FRE 403.

Dated:  November 13, 2023
New York, NY

Respectfully submitted,

GENOVA BURNS LLC

By: ___*/s/ Lawrence Bluestone*___
        Rajiv D. Parikh, Esq.
        Charles J. Messina, Esq.
        Lawrence Bluestone, Esq.

        *Attorneys for Defendants A.J. Trucco, Inc. and Trucconova, LLC*

**CERTIFICATE OF CONFERENCE OF COUNSEL**

In accordance with Section 1(b)(ii) of the Court's Individual Trial Rules and Procedures, the undersigned certifies that on October 24, 2023 and November 10, 2023, counsel for Defendants conferred with counsel for Plaintiffs in good faith on the above issue and were unable to reach agreement on the issues raised by this motion *in limine*.

Dated: November 13, 2023                          */s/ Lawrence Bluestone*
                                                                    Lawrence Bluestone