IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REDCELL CORP., and REDCELL SYSTEMS, LLC,<br><br>            Plaintiffs,<br><br>v.<br><br>A.J. TRUCCO, INC. and TRUCCONOVA, LLC,<br><br>            Defendants. | No. 1:20-cv-00018-JGLC-SLC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' UNTIMELY SUPPLEMENTAL EXPERT REPORT AND EXCLUDE TESTIMONY ABOUT ADDITIONAL DAMAGES OPINION**

Rajiv D. Parikh, Esq.
Charles J. Messina, Esq.
Lawrence Bluestone, Esq.
GENOVA BURNS LLC
115 Broadway, 15th Floor
New York, NY 10006
Phone: 212-566-7188
rparikh@genovaburns.com
cmessina@genovaburns.com
lbluestone@genovaburns.com

*Attorneys for Defendants A.J. Trucco, Inc. and Trucconova, LLC*

Defendants A.J. Trucco, Inc. and Trucconova, LLC ( "Defendants") respectfully submit this memorandum of law in support of their motion to strike the "Addendum to Expert Opinion" of J. Christopher Westland ("Westland"), dated November 20 and 21, 2023, but served by plaintiffs Redcell Corp. and Redcell Systems, LLC ("Plaintiffs" or "Redcell") on November 23, 2023, Thanksgiving day and a mere ten days before trial (the "Supplemental Report").[1]

The Court should exclude this untimely Supplemental Report under Rule 37 and preclude testimony about it. The Supplemental Report is not simply an extension of Westland's prior damage calculations, and it is improper under Fed. R. Civ. P. 26(a)(2)(B) because it fails to describe the methods of Westland's new purported calculations. In actuality, it appears to change the basis for his opinion, which previously relied on "curated" financial statements created by Westland, but now appears to rely in part on tax returns, although Westland is silent on how the two can be reconciled. The Supplemental Report was not served 30 days before trial as required by Fed. R. Civ P. 26(e)(2) and (a)(3), and Plaintiffs have no reason (let alone good cause) why they did not supplement their expert's opinion in the more than a year since they knew of the approximate trial date, and two years since the parties certified to the Court that expert discovery was complete. Defendants would be significantly prejudiced if the Supplemental Report was permitted because they have no time to question Westland to understand his new methods or to prepare a rebuttal (and this Court has already rejected an adjournment of the trial).

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.  Expert Discovery and the Parties' Joint Certification It Was Complete.**

The Court's Rule 16 scheduling orders initially set a March 15, 2021 deadline for expert discovery, which was extended on consent to June 3, 2021. (ECF Nos. 34, 45.) On April 28, 2021,

---

[1] The Supplemental Report is attached as **Exhibit A** to the accompanying Declaration of Lawrence Bluestone. Exhibit references are to the Bluestone Declaration, unless otherwise noted.

the parties submitted a joint letter to the Court detailing a discovery dispute regarding Defendants' production of certain tax returns. (ECF No. 50.)

Plaintiffs did not wait for the Court's ruling on that issue to serve their expert report. Instead, on May 12, 2021, Plaintiffs served Westland's initial report ("Westland Report") (**Ex. B**). Westland relied on a set of financial records selected from Plaintiffs' alleged "Joint Database" (or what the Court has described as the Disputed Materials) – records which were admittedly incomplete. (Ex. B at 50 (listing records).) As Westland explained, he extracted "financial information from discovery documents, internal reports and external web-scrapings. This data was curated into a set of financial statements spanning the years 2008 and 2019." (*Id.* at 8.) Westland notes that the information he received was "missing data" and that he "used industry best-practice methods for both cross-sectional and time-series methods to interpolate missing data." *Id.* In a "technical appendix," Westland lists two pages of code (in the R programming language) he purports to have used to "interpolate" the financial data into his "curated financial dataset." (*Id.* at 11-12.) Using this "interpolated" financial data, Westland opined that Defendants "unjustly enriched" themselves from 2019 through 2021 by their "misappropriation of Redcell's PLEXUS IMP software in 2019" in the total amount of $14,596,902, which includes $684,489 in excess profits on sales; $12,287,400 in savings from cost efficiencies; and $1,625,013 in increased business value. (*Id.* at 1.)

On May 13, 2021, the day after Plaintiffs served the Westland Report, the Court entered an Order requiring Defendants to "promptly produce their tax returns for the years 2018 and 2019, and, if they exist, for the years 2020 and 2021" and that "[i]f tax returns for any of these years do not exist, Defendants shall produce any existing financial statements reflecting their annual revenue for the relevant time period." (ECF No. 54 ¶ 1.) The Court then set deadlines for

Defendants' expert report and a reply/response by Westland. (*Id.* ¶ 2.) The expert deadlines were subsequently extended at Defendants' request. (ECF Nos. 61, 63).

Contrary to Plaintiffs' statement at the final pretrial conference, Judge Cave did *not* order production of records for non-party Trucco, Inc. (*See* Excerpt of Final Pretrial Conf. Tr. At 45:25-46:3 (**Ex. C**).) Rather, because Westland analyzed unspecified (and incomplete) financial data that included some Trucco, Inc. data, Defendants' expert, Mark S. Gottlieb, CPA, PC ("Gottlieb"), was compelled to review Trucco, Inc. financial data to properly respond to Westland's opinions, which he did in his rebuttal report, served on July 13, 2021 (the "Gottlieb Report") (**Ex. D**). Among Gottlieb's criticisms was Westland's reliance on "curated" pro-forma financial statements without review of Defendants' actual books and records. (Ex. D at 13). As required by Fed. R. Civ. P. 26(a)(2)(B)(ii), the Gottlieb Report appended the financial statements and tax returns Gottlieb considered, including tax returns from Trucco, Inc. (*Id.*)

On July 22, 2021, Plaintiffs served Westland's Rebuttal to the Gottlieb Report ("Westland Rebuttal") (**Ex. E**). With respect to Gottlieb's criticism that Westland had not considered Defendants' actual books and records, Westland stated that the financial documents were "withheld from [him] in discovery," but that he was "able to compute useful, and accurate pro forma financial statements that were generally within 10% on the key statistics used in damage calculations." (*Id.* at 14.) In his deposition, Westland explained that he did not re-calculate damages based on Defendants' actual financial records, because he "didn't want to trudge up too many hours, but I did some simple analysis that indicated that the change would probably not be more than about 10 percent." (**Ex. F**, at 121:14-122:5).

Both Westland and Gottlieb were deposed on August 17, 2021 and, on August 25, 2021, the parties filed a joint letter expressly stating that "***the parties confirm that expert discovery is***

3

*complete.*" (ECF No. 72) (emphasis added).

## II. The Pretrial Submissions.

After the Court decided (and largely rejected) the parties' *Daubert* motions (ECF No. 94), on September 12, 2022, Judge Torres entered an Order setting a trial date in this matter for November 13, 2023. (ECF No. 97.) The case was eventually reassigned to Judge Rakoff who, on May 1, 2023, moved the trial date to December 4, 2023. (Minute Entry.)

On July 11, 2023, the matter was reassigned to Judge Clarke (ECF No. 99), and, in response to the Court's Order, the parties submitted a joint letter on July 27, 2023, which detailed the parties' designation of experts, the exchange of expert reports, the occurrence of expert depositions, and the filing and resolution of the parties' *Daubert* motions. (ECF No. 100 at 3.) Plaintiffs *did not* (i) demand that Defendants produce or supplement production of tax returns, or (ii) state that they intended to supplement the Westland Report. In reliance on the parties' joint letter, the Court ordered that the parties "should be prepared to discuss which ADR mechanism would be helpful in resolving this case . . . ." (ECF No. 101.) On August 3, 2023, the parties attended a pretrial conference and, again, Plaintiffs made no demand for Defendants to supplement their discovery production with later tax returns. The Court at that point kept the trial date at December 4 and set a November 2, 2023 deadline for pretrial submission and *in limine* motions; those deadlines would eventually be extended because of Mr. Russ's illness. (Aug. 3, 2023, Minute Entry; ECF Nos. 107, 111.) With the parties' consent (ECF No. 104), the Court referred this matter to mediation, which was ultimately unsuccessful. (ECF No. 105.)

On October 5, 2023, Plaintiffs' counsel sent a letter Defendants' counsel demanding production of additional tax returns from 2021 to date. (**Ex. G**). Plaintiffs' October 5, 2023 letter made no mention of Plaintiffs producing a supplemental expert report. Defendants produced

4

certain tax returns on October 30, 2023. (**Ex. H**). At the request of Plaintiffs' counsel, on November 10, 2023, Defendants thereafter produced supplemental tax return materials of non-party Trucco, Inc., while expressly "maintain[ing] our objection to the relevance of these records as Trucco Inc. is not and has never been a party to this action." (**Ex. I**).

As required by the Court's scheduling order, the parties filed extensive pre-trial submissions and *in limine* motions on November 13, 2023. (ECF Nos. 126-154). In the parties' Joint Pretrial Order, Plaintiffs disclosed only that their damages would include "[d]amages from the second half of 2021 to the date of trial, as is consistent with trial testimony as to continued use of Plexus by Trucco, in an amount to be disclosed at or prior to trial." (ECF No. 126, at 16.) Again, Plaintiffs did not state they would submit a supplemental report from Westland or that the basis for his calculations would change. Nor did Plaintiffs seek leave to submit a supplemental report out of time.

### III.   Plaintiffs' Supplemental Report.

On the afternoon of Thanksgiving, November 23, 2023—10 days before trial—Plaintiffs served the Supplemental Report by email. (Ex. A.) The Supplemental Report is dated November 21, 2023 on the cover page (*id.* at 1), but dated November 20, 2023 by Westland's signature (*id.* at 3). Contrary to Westland's original Report, his Supplemental Report states that he reviewed "Trucco's" actual financial statements for 2021-2023. (*Id.* at 1.) As to his calculations, Westland states they were "computed continuing financial trends of values in [the] original Opinion and computed with Excel." (*Id.* at 1-2.) No actual calculations were specified and the referenced Excel spreadsheet was not provided. Westland then cryptically states: "Check: using Trucco's updated financial statements and recomputing with the same methods used in the Opinion." (*Id.* at 2.) Westland provides no detail on how he ran this "check" calculation, whether

5

the actual data was reconciled with his "curated" data, or whether he used a combination of both.

In addition, the Supplemental Report appears to be based, at least in part, on the financial information of non-party Trucco, Inc., which was produced to Plaintiffs, subject to Defendants' objection as to the relevance of these materials. (Ex. I.) The Supplemental Report contains no explanation as to why or on what basis it includes Trucco, Inc. financial data, or how much of the Supplemental Report's damages estimate is based on the financial information of a non-party.

## LEGAL ARGUMENT

### I. The Court Should Strike Plaintiff's Untimely Supplemental Report and Preclude Testimony Based on It.

#### A. The Supplemental Report Does Not Adequately Disclose Westland's Calculations And Violates Rule 26(a)(2).

With respect to testifying experts, Rule 26(a)(2) mandates production of "a written report – prepared and signed by the witness," which "***must*** contain . . . a ***complete*** statement of all opinions a witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). "The purpose of an expert report is to eliminate unfair surprise to the opposing party. The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009) (quotations and alterations omitted).

Here, even without considering timeliness, the Supplemental Report should be excluded because it fails to provide the basis for Westland's alleged calculations. Looking at the Supplemental Report itself, Defendants and their expert would have no way to cross-examine Westland to test the reliability of the calculations he did not provide. Preclusion is required when a report is "so inadequate that it is impossible for defendant to ascertain any of the specifics to which plaintiffs' experts will testify or any of the bases from which they derived their conclusions."

6

*251 CPW Hous. Ltd. v. Paragon Cable Manhattan*, No. 93 CIV. 0944 (JSM), 1995 WL 70675, at *4 (S.D.N.Y. Feb. 21, 1995), *aff'd*, 71 F.3d 405 (2d Cir. 1995). For this reason alone, the Supplemental Report should be stricken.

### B. The Supplemental Report is Untimely and Should Be Excluded under Rule 37.

The incompleteness of the Supplemental Report is exacerbated by the timing of the disclosure since Defendants have no time to analyze it, request additional information, take Westland's deposition, or supplement their own expert's rebuttal. As to timing, a "party must make these [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 26(e) extends to the duty to supplement disclosures to expert reports and for any "expert whose report must be disclosed under Rule 26(a)(2)(B) . . . . ***[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.***" Fed. R. Civ. P. 26(e)(2) (emphasis added). Rule 26(a)(3) requires pretrial disclosures to be made "at least 30 days before trial." Thus, here, Plaintiffs were required to serve any supplements to their report by November 3, 2023, which would have permitted Defendants to file objections in the time required by the Court's pretrial orders.

Fed. R. Civ. P. 37(c) provides for the "automatic" exclusion of evidence not disclosed as required by Rule 26(a) or (e). *Whalen v. CSX Transportation, Inc.*, No. 13-cv-3784, 2016 WL 5660381, at *5 (S.D.N.Y. Sept. 29, 2016). The Second Circuit has identified four factors to guide district courts in determining whether exclusion is required: (1) the explanation for failure to comply with a discovery order; (2) the importance of the new evidence; (3) the prejudice suffered by the opposing party as a result of having to meet the new evidence; and (4) the possibility of a continuance. *Softel Inc. v. Dragon Medical & Scientific Comm., Inc.*, 118 F.3d 955, 962 (2d Cir. 1997).

7

Regarding the first factor, Plaintiffs have no explanation for their failure to comply with the Federal Rules and the Court's orders regarding discovery. Plaintiffs will no doubt try to excuse their own failure by claiming they only received certain supplemental tax return materials in October and November 2023. To be clear, ***Plaintiffs only requested these supplemental tax return materials on October 6, 2023, and did not convey that such materials would be used to create the Supplemental Report.*** (Ex. G). What's more, Plaintiffs never indicated to Defendants (or the Court) that they were demanding additional tax returns, including to the Court in response to its July 11, 2023 Order requesting an update on any outstanding discovery. (ECF Nos. 99; 100.) Expert discovery has been closed for over two years, since August 18, 2021, and the parties certified on August 25, 2021 that "***expert discovery is complete.***" (ECF No. 72) (emphasis added). Indeed, Plaintiffs should be judicially estopped from introducing the Supplemental Report – or any testimony about such calculations – based on these representations, which the parties and the Court accepted and relied on, but which are clearly inconsistent with Plaintiffs' position now. *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001); *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619-621 (2d Cir. 2012).

Plaintiffs have known this trial would occur in the Fall of 2023 since September 12, 2022 and that it would start on December 4 since May 1, 2023. (ECF No. 97; May 1, 2023 Minute Entry). To the extent Plaintiffs thought Defendants were deficient in any obligation to supplement discovery, Plaintiffs could and should have requested additional tax returns earlier and, if their request was not complied with, filed a motion.[2] And any discovery failings on Defendants' part

---

[2] Defendants do not concede they were ever obligated to produce tax records beyond 2021 or any records for Trucco, Inc. As explained during the Final Pretrial Conference, Plaintiffs had the opportunity to seek to add Trucco, Inc. as a party and elected not to. (*See* Ex. C, Tr. at 46:3-6 ("And I'll admit to your Honor I didn't feel like I wanted to start suing another entity and start expanding this case when my desire was to complete discovery and bring this case to trial." (statement of Mr. Russ)). Discussion of the similarly named Trucco, Inc. would lead to significant jury confusion. *See, e.g.*, *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1372–73 (2d Cir.1988).

8

do not excuse Plaintiffs' failure to comply with the Rules. *See Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.,* No. 13-CV-4106-CJW, 2017 WL 632105, at *5 (N.D. Iowa Feb. 13, 2017) (excluding new damages calculation submitted in supplemental expert report served months before trial date and rejecting argument that delay was defendant's failure for failing to produce documents because "even if Defendant had violated discovery rules, it is hardly a justification for excusing Plaintiff's violation. It seems unnecessary that the Court should have to state the obvious; two wrongs don't make a right.").

Regarding the second and third factors, the Supplemental Report is important in that it nearly triples Westland's damages estimate, which has somehow risen from $14,596,902 in the Westland Report to $38,346,925. (*Compare* Ex. A *with* Ex. B.) Defendants will be significantly prejudiced by having to rebut the Supplemental Report outside of the normal expert discovery process and effectively for the first time during trial. As explained above, the Supplemental Report is inadequate and fails to explain Westland's calculations. The Supplemental Report changes Westland's method because he now appears to use actual financial records instead of his "curated" financial data, but provides no explanation for how the two methods were cross-referenced or checked. Thus, the Supplemental Report is *not* akin to a simple calculation with defined damages amounts per day. The exact data, computations, and methods are extremely complex, and it is unfair and prejudicial to require Defendants to cross-examine Westland on his unspecified methods for the first time before a jury. Based on the timing of the Supplemental Report, however, that cannot happen now. *See Lidle v. Cirrus Design Corp.*, No. 08-cv-1253, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) (striking late supplemental report because "[w]hen the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of

9

the rule is nullified") (quotation omitted). ³

Finally, this Court has already rejected a request for continuance because of the age of the case, the imminence of trial, and Plaintiffs' opposition to a continuance. (ECF No.125, at 4-5.) Defendants do not seek to relitigate this point and a continuance is less likely now that trial is only days away.  Having the Supplemental Report in hand for trial is insufficient; "[t]he intent of the rule is to ensure that expert depositions can proceed with parties already armed with the expert's report so as to be able to effectively cross-examine the expert and ***prepare for trial, or determine if a counter report is necessary***." *AIG Aviation Ins. v. Avco Corp.*, No. 09-352, 2011 WL 13174496, at *2 (D.N.M. Mar. 14, 2011) (emphasis added).  And reopening discovery would not cure the problem because that would lead to new rebuttal reports, new depositions and "[a]ll of this would contribute to significant delay in the ultimate disposition of the case, increase costs, and thwart the Court's case management plan and the existing trial date." *Id.*   The Court should strike the Supplemental Report and bar testimony based on it.

## CONCLUSION

For the foregoing reasons, the Court should strike the Supplemental Report and bar Plaintiffs' expert from testifying about it at trial.

---

³ *See also Bozick v. Conagra Food,* No. 19-cv-4045 (LJL), 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021) (striking "supplemental" report that could have been submitted earlier in more than 2-year old case even though expert discovery was not concluded):; *Coporaso v. Donnelly*, No. 16-cv-521, 2019 WL 3886726, at *4 (D. Conn. Aug. 19, 2021) (striking report submitted without leave years after the end of expert discovery and set for trial in 6 weeks).

Dated: November 30, 2023
      New York, NY

Respectfully submitted,

GENOVA BURNS LLC

By:   */s/ Lawrence Bluestone*
      Rajiv D. Parikh, Esq.
      Charles J. Messina, Esq.
      Lawrence Bluestone, Esq.
      115 Broadway, 15th Floor
      New York, NY 10006
      Phone: 212-566-7188
      rparikh@genovaburns.com
      cmessina@genovaburns.com
      lbluestone@genovaburns.com
      *Attorneys for Defendants A.J. Trucco, Inc. and Trucconova, LLC*